IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADAM AILION, individually and on behalf of a class of others similarly situated,<br>　　　　Plaintiff,<br><br>　　v.<br><br>HEALTHCARE SOLUTIONS TEAM, LLC and NATIONAL GENERAL HOLDINGS CORP.,<br>　　　　Defendants. | Case No. 1:21-cv-06231<br><br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

1. Plaintiff Adam Ailion is on the National Do Not Call Registry, and he has repeatedly requested not to receive telemarketing calls from Defendants Healthcare Solutions Team, LLC ("HST") and National General Holdings Corp. ("NatGen").

2. Plaintiff continues to receive telemarketing calls made by or on behalf of Defendants, even though he has asked that they stop.

3. The reasons Plaintiff continues to receive calls is that Defendants' Do Not Call ("DNC") policies do not properly track the TCPA's requirements.

4. For example, NatGen's Do Not Call policy, Exhibit A, permits calls to phone numbers that are on a company-specific DNC list, if the consumer provided "prior express written consent."

5. However, the Telephone Consumer Protection Act ("TCPA") prohibits making any telemarketing call to a person who has previously asked not to receive such calls, regardless of "prior express consent." 47 C.F.R. § 64.1200(d).

6. Similarly, the TCPA requires that sellers and their vendors coordinate internal Do Not Call lists, in order to effectively stop calls made on behalf of the seller. *In re TCPA*, 20 FCC

Rcd. 13664, 13667-68 (2005); *United States v. Dish Network*, *LLC*, 954 F.3d 970, 976 (7th Cir. 2020), *cert. dismissed*, 141 S. Ct. 729 (2021).

7. However, neither HST nor NatGen coordinate their DNC lists as required by the TCPA. Instead, company-specific DNC lists are kept separate by "NatGen entity," which are not coordinated. Exhibit A, NatGen's Do Not Call Policy.

**Parties**

8. Plaintiff Adam Ailion is a natural person and a citizen of the State of Georgia. At all relevant times, Plaintiff was the subscriber and user for the cellular telephone number at issue.

9. Defendant Healthcare Solutions Team, LLC ("HST") is an Illinois limited liability company with a principal place of business at 1900 South Highland Avenue, Suite 203, Lombard, Illinois 60148. It also has offices in Downers Grove, Illinois. It is wholly-owned by NatGen. HST is at home in Illinois.

10. National General Holdings Corp. ("NatGen") is an insurance company based in New York City, and incorporated in North Carolina, that was recently purchased by Chicagoland-based Allstate. NatGen maintains a principal place of business in Illinois at 30 North LaSalle Street, Suite 2050, Chicago, Illinois 60602.

11. NatGen engaged its Illinois-based affiliate HST to develop business for it, which resulted in the calls and texts to Plaintiff. NatGen thus knowingly and intentionally set up its telemarketing and lead generation efforts – including the calls to Plaintiff – to generate business through its affiliate located in the State of Illinois.

12. NatGen also pairs HST with lead generators, to assist it with developing business for both HST and NatGen.

13. NatGen assists with advertising for telemarketing jobs at HST, including for its Chicagoland-based offices to handle calls like those to Plaintiff and the Class.

14. NatGen has hundreds or thousands of customers in Illinois. Upon information and belief, hundreds of these were gained through telemarketing like that which Plaintiff received.

**Jurisdiction & Venue**

15. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law.

16. Additionally, the Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. 1332(d)(2). The matter in controversy exceeds $5,000,000 in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a nationwide class, which will result in at least one Class member residing in a state different from Defendant.

17. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because Defendant HST is a resident of this District, and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, including Defendants' purposeful efforts to generate business in this District through the illegal telemarketing to which Plaintiff's claims relate.

**Facts**

18. Plaintiff has had prior dealings with both Defendants, and most recently requested that NatGen place his phone number on its Do Not Call list in December 2020.

19. Plaintiff requested that HST place his phone number on its Do Not Call list in December 2020, too.

3

20. Upon information and belief, each Defendant placed Plaintiff's phone number on its own DNC list, in or around December 2020.

21. On Tuesday August 17, 2021, at 10:29 a.m., Plaintiff received a telemarketing call from a person who identified themselves as "Johan from Health Solutions," from caller ID 305-396-6613.

22. Upon information and belief, this call was made on behalf of both Defendants, for the purposes of selling NatGen insurance policies through HST.

23. The caller never identified any "seller" on whose behalf the call was made.

24. The caller ID for this call was spoofed.

25. During this call, Plaintiff told the caller it would be okay with him to receive another telephone call the following day at 5:00 p.m. Such call never happened.

26. On August 20, 2021, at 2:19 p.m., Plaintiff received another telemarketing call from a person named "Ellie" who said she was calling on behalf of "Healthcare Savings Team," from caller ID 678-345-0704.

27. Upon information and belief, this call was made on behalf of both Defendants, for the purposes of selling NatGen insurance policies through HST.

28. The caller never identified the "seller" on whose behalf the call was made (i.e., NatGen), the caller ID for this call was spoofed, and there was no phone number or address provided that might assist with opting out.

29. During this call, Plaintiff stated that it was okay for Ellie's health care assistant to call him later that day. This call never happened, either.

30. Plaintiff received a marketing telephone call from HST employee and NatGen insurance agent Jim Martelo on August 23, 2021, at 10:19 a.m., from caller ID 281-581-8001.

31. This call was made by HST for the purposes of selling NatGen insurance policies through HST.

32. This call was authorized by both NatGen and HST.

33. Later that day, Plaintiff received a marketing text message from Jim Martelo at caller ID 813-544-4530, that contained a link to insurance quotes:



34. Upon clicking on the link, Plaintiff was provided three options for purchase of insurance, two of which were with NatGen:

5



35. The text message was sent by HST for the purpose of selling NatGen insurance products.

36. This text was authorized by both NatGen and HST.

37. Plaintiff received these improper calls as a direct result of the fact that Defendants' company-specific (a/k/a internal) Do Not Call policies, practices and procedures are incongruent and conflict with the letter and spirit of the TCPA.

38. Because Defendants' policies, practices, and procedures do not comply with the TCPA, there are undoubtedly others who, like Plaintiff, have received telemarketing calls by or on behalf of Defendants, after they requested not to receive such.

39. A telemarketing call to sell insurance is the type of interaction where the caller customarily carries authority to do specific types of acts on behalf of the insurance company principal, such as market and write insurance policies.

40. Both Defendants know that their Do Not Call polices do not call for coordination of DNC lists with agents or vendors, and knew that Plaintiff was likely to receive additional calls on their behalf from vendors. Both Defendants also know that their internal DNC policies are noncompliant with the TCPA. Nevertheless, Defendants have not changed their policies, practices, or procedures to come into compliance on this point.

41. Defendants had the ability to control the minutiae of their and their vendors' internal DNC compliance, but recklessly or knowingly failed to do so, instead electing to accept the calls' benefit without shoring up their – or their vendors' – policies, practices, or procedures to comply with the TCPA.

42. Both Defendants also know that vendors generally do not mention their names during calls; upon information and belief, Defendants *prohibit* most or all telemarketers and lead generators vendors from mentioning their names in marketing solicitations like what Plaintiff and the Class received.

43. Plaintiff and the Class have been damaged by the actions and omissions alleged here. They were forced to deal with telemarketing calls that they did not consent to, and that they affirmatively requested not to receive. Their phones were temporarily seized, and the calls were a nuisance and annoying, wasted time, and represent a public safety threat.

## Class Action Allegations

44. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and a Class consisting of:

> All persons in the United States (i) to whom a call was made for the purpose of encouraging the purchase of NatGen and/or HST goods or services or to find a marketing "lead" for their goods or services, (ii) to a residential telephone number, (iii) where the consumer had previously asked NatGen, HST, or any of their lead generators or telemarketing vendors not to call them, and (iv) where there was more than one such call within a 12-month period, at least one of which was made on or after the date four years prior to filing of this action.

45. Upon information and belief, the cellular telephone numbers of more than 1,000 persons in the above-defined class.

46. Common questions of law or fact exist as to all members of the Class, and predominate over any questions solely affecting any individual member, including Plaintiff. Such questions common to the Class include but are not limited to:

    a. Whether NatGen and HST's Do Not Call policy is in compliance with the TCPA;

    b. Whether NatGen and HST should be held liable for any calls made by third parties; and

    c. Damages, including whether Defendants' violations were willful or knowing such as to justify treble damages under 47 U.S.C. § 227(c)(5).

47. Plaintiff's claims are typical of the claims of the other members of the Class. The factual and legal bases of Defendants' liability to Plaintiff and the other members of the Class are the same: Defendants violated the TCPA by causing the phone number of each member of the Class, including Plaintiff, to be repeatedly called despite a prior request to stop, without having instituted proper DNC procedures required under the TCPA.

48. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests that might conflict with the interests of the Class. Plaintiff is interested in pursuing these claims vigorously, and has retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged herein.

49. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual action would entail. There are, on information and belief, thousands of members of the Class, such that joinder of all members is impracticable.

50. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

51. Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making relief appropriate with respect to the Class as a whole. Prosecution of separate actions by individual members of the Class, should they even realize that their rights have been violated, would likely create the risk of inconsistent

or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct.

52. The identity of the Class is, on information and belief, readily identifiable from Defendants' and their vendors' records.

### COUNT I
### Violations of the TCPA, 47 U.S.C. § 227
### (Internal Do-Not-Call Violations)

53. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

54. The TCPA requires any party that is engaged in telemarketing – including "sellers" who do not make calls themselves – to maintain and honor a written internal do-not-call policy.

55. Defendants' written do-not-call policy, Exhibit A, as well as their procedures, are incorrect and insufficient as to the TCPA's internal Do Not Call rules.

56. Defendants' policy and procedures permit calls to phone numbers that are on the internal DNC list, if the caller has "prior express written consent."

57. Defendants' policy and procedures do not call for coordination of internal DNC lists among telemarketing or lead vendors, or between the Defendants, and no coordination takes place.

58. Defendants' policy and procedures do not call for TCPA or DNC training.

59. Defendants' policy and procedures do not contain any policy concerning identification of sellers and telemarketers and, as Plaintiff himself experienced.

60. Telemarketing calls made on behalf of Defendants are often spoofed, and fail to properly identify Defendants or provide valid contact information.

61. Defendants violated the TCPA by not having sufficient internal DNC policies and/or by not following or honoring the policies that they did have.

62. As a result of these violations, Plaintiff and the Class were damaged by Defendants' violations, in that they received non-privileged and unsolicited telemarketing calls that invaded their privacy, after having requested that calls stop.

WHEREFORE, Plaintiff Adam Ailion, individually and on behalf of the Class, respectfully requests that the Court enter judgment against Defendants for:

A. Certification of the Class as alleged herein;

B. A declaration that Defendants violated the TCPA as to Plaintiff and the Class;

C. An injunction to prevent further violations;

D. Damages pursuant to 47 U.S.C. § 227(c)(5), as applicable;

E. Costs, expenses, and attorneys' fees, to the extent permitted by law; and

F. Such other or further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff requests a jury trial as to all claims of the complaint so triable.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: November 19, 2021 | ADAM AILION, individually and on behalf of a class of others similarly situated |
|  | By: */s/ Alexander H. Burke* |

Alexander H. Burke
Email: aburke@burkelawllc.com
Daniel J. Marovitch
Email: dmarovitch@burkelawllc.com
BURKE LAW OFFICES, LLC
909 Davis Street, Suite 500
Evanston, IL 60201
Telephone: (312) 729-5288

*Counsel for Plaintiff*