UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADAM AILION, individually and on behalf of a class of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HEALTHCARE SOLUTIONS TEAM, LLC,<br><br>Defendant. | Civil Action No. 1:21-cv-06231<br><br>Hon. LaShonda A. Hunt<br><br>Hon. Jeannice W. Appenteng |

NATIONAL GENERAL HOLDING CORP.'S OPPOSITION
TO PLAINTIFF'S MOTION TO COMPEL THIRD-PARTY SUBPOENA

RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street, Suite 2900
Chicago, Illinois 60602
Telephone:    312.471.8700
Facsimile:    312.471.8701

National General Holdings Corp. ("NatGen") was dismissed from this suit over a year ago. In the Order dismissing NatGen, this Court held that NatGen "cannot be held vicariously liable" for Mr. Ailion's claims against HST. Mem. Op. & Order at 12, 17 (Mar. 2, 2023), ECF 56. Plaintiff Adam Ailion attempts to subvert that ruling. He seeks to compel eight broad categories of documents—completely untethered to Mr. Ailion's sole claim against Healthcare Solutions Team, LLC ("HST")—not only from NatGen but also from each of NatGen's "affiliates," "subsidiaries," "parents," and "partners." *See* NatGen's Resp. & Obj. to Pl.'s Subpoena *Duces Tecum* at 2 (Apr. 4, 2023), attached as E<small>XHIBIT</small> 1. The Subpoena is unreasonably overbroad and disproportionate to the needs of Mr. Ailion's case against HST because, despite the Court's dismissal of NatGen, it seeks *NatGen's* internal do-not-call list, records of do-not-call requests to *NatGen*, and records of *others'* use of NatGen's internal do-not-call list. Production in response to the Subpoena would unduly burden third-party NatGen, and Mr. Ailion's motion should be denied.

## BACKGROUND

Mr. Ailion brought this putative class action under the Telephone Consumer Protection Act (TCPA), 47 USC § 227(c)(5). He alleges that he received phone calls and text messages in violation of the "Do Not Call List" provisions thereof and further alleges that Defendant Healthcare Solutions Team LLC ("HST") authorized those calls. *See*, *e.g.*, Revised Second Amended Complaint ¶ 22–23, 26, 31, 36, ECF 31.

Mr. Ailion's current claim is narrow—only one claim remains in the case against HST, asserting HST's policies and procedures led to unsolicited marketing

calls to Mr. Ailion and his proposed class. *Id.* ¶ 69–75. Mr. Ailion originally brought suit against NatGen for alleged violations of the Florida Telephone Solicitation Act (FTSA) and to seek a declaratory judgment that NatGen had violated the TCPA. *See generally id.* This Court found that NatGen was not an affiliate of HST in the context of the FTSA and that Mr. Ailion lacked standing against NatGen for declaratory relief because his alleged injuries were not fairly traceable to NatGen. ECF 56 at 15–16.

Following the Court's dismissal of the claims against NatGen, Mr. Ailion issued the Subpoena to NatGen. NatGen objected to production of the broad swaths of information requested in the Subpoena, which are unrelated to the allegations of the Second Amended Complaint, including several overbroad and unduly burdensome requests seeking class-wide discovery on a nation-wide basis. The requests of the Subpoena to which Mr. Ailion now moves to compel production are:

**Request No. 1:** All data, communications, and other documents relating to Plaintiff or his phone number, [redacted].

**Request No. 2:** [NatGen's] internal do-not-call list, including all associated data (i.e., phone number, add date, removal date, etc.).

**Request No. 3:** [NatGen's] do-not-call policy and all associated instructional communications, training materials, handbooks, policy, practice, and procedure documents you provided, made available to, or otherwise required compliance with, as to HST (sub)vendors and agents.

**Request No. 4:** All records that show when and how [NatGen] received or transmitted do-not-call request information from or to any HST agent or (sub)vendor.

**Request No. 5:** All records that show when and how HST (sub)vendor[s] and agent scrubbed lead lists against [NatGen's] internal do-not-call list. (Alteration original.)

**Request No. 6:** All communications with or concerning James Martelo or JRM Health Insurance Advisors, with respect to lead generation, telemarketing, or business development.

**Request No. 7:** All communications and documents relating to complaint of any kind (*e.g.*, consumer, regulatory, pre-litigation, litigation), concerning telephone communications by any HST agent or (sub) vendor to a person who allegedly did not want or consent to receive such calls, and any associated investigation or action taken by [NatGen] (or others on [NatGen's] behalf) with regard to such.

**Request No. 8:** All documents pertaining to any disciplinary action [NatGen] took as to any HST agent or (sub)vendor arising from telemarketing on [NatGen's] behalf.

## ARGUMENT

Discovery is limited to "nonprivileged matter[s] that [are] relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts have "extensive discretion in granting and denying discovery, [and] have long held that it is permissible to refuse to grant discovery of matters of 'marginal relevance.'" *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). "[A] proponent of a motion to compel discovery bears the initial burden to prove that the information sought is relevant." *PsyBio Therapeutics, Inc. v. Corbin*, No. 20-cv-3340, 2021 WL 4459527, at *1 (N.D. Ill. Sept. 29, 2021).

Courts must protect third-party subpoena recipients from undue burden, Fed. R. Civ. P. 45(d)(3)(A)(iv), and must weigh "the probative value of the information sought against the burden of production on the non-party." *Little v. JB Pritzker for Gov.*, No. 18-cv-6954, 2020 WL 1939358, at *2 (N.D. Ill. Apr. 22, 2020) (quoting *Martin v. United States*, No. 13-cv-3130, 2015 WL 7783516, at *2 (C.D. Ill. Dec. 3, 2015)); *Eggleston v. Chicago Journeymen Plumbers' Loc. Union No. 130*, 657 F.2d 890,

904 (7th Cir. 1981) ("It is well established" that the limits of discovery "grow more formidable as the showing of need decreases.") (internal citations omitted). "Thus, in determining whether the recipient of a subpoena is being subjected to undue burden, courts consider a number of factors, including 'the person's status as a non-party, the relevance of the discovery sought, the subpoenaing party's need for the documents, the breadth of the request and the burden imposed on the subpoenaed party.'" *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013) (quoting *Last Atlantis Capital, LLC v. AGS Specialist Partners*, No. 04-cv-397, 2013 WL 182792, at \*1 (N.D. Ill. Jan. 17, 2013)). "The most crucial factor to this Court is the fact that [NatGen] is a non-party. Non-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *Guy Chem. Co. v. Romaco AG*, 243 F.R.D. 310, 313 (N.D. Ind. 2007) (citing *United States v. Amerigroup Ill., Inc.*, No. 02-cv-6074, 2005 WL 3111972, at \*4 (N.D. Ill. Oct. 21, 2005)).

I. **Mr. Ailion's requests for NatGen's do-not-call materials do not seek relevant documents but impose an undue burden.**

Mr. Ailion first asks the Court to compel several categories of documents related to NatGen's do-not-call lists and procedures. ECF 114 at 5–10. But Mr. Ailion's arguments in this section are based on his misplaced theory "that HST violated the TCPA by failing to properly coordinate IDNC requests." ECF 114 at 6; *United States v. Dish Network L.L.C.*, 954 F.3d at 970, 976 (7th Cir. 2020) ("failure to coordinate internal do-not-call lists . . . is not itself a legal wrong.").

As relevant here, Mr. Ailion attempts to assert a violation of the TCPA based on HST's alleged failure to coordinate its do-not-call list with all of its "downlines" and "uplines," including NatGen. *See* ECF 31 ¶ 69. Mr. Ailion's allegations that HST violated the TCPA generally by failing to coordinate do-not-call lists are directly contrary to *Dish Network's* explanation that "failure to coordinate internal do-not-call lists . . . is not itself a legal wrong." 954 F.3d at 976. Indeed, the Seventh Circuit explained that the TCPA's regulatory framework prohibits those selling goods or services "from causing a telemarketer to initiate any outbound telephone call to a person" who has asked not to be called regarding their good or service. *Id.* (quoting 16 C.F.R. § 310.4(b)(1)) (cleaned up). "This tells us that the violation is the call, not the failure to coordinate internal do-not-call lists. Lack of coordination may lead to forbidden calls, but the absence of coordination is not itself a legal wrong." *Id.* Since lack of coordination does not support a violation, the relevance of and need for such documents is minimal.

Without a claim or defense to which *NatGen's* do-not-call materials pertain, Mr. Ailion impermissibly seeks to compel production of irrelevant materials and unduly burden NatGen in the following requests:

**Request No. 2:** [NatGen's] internal do-not-call list, including all associated data (i.e., phone number, add date, removal date, etc.).

**Request No. 4:** All records that show when and how [NatGen] received or transmitted do-not-call request information from or to any HST agent or (sub)vendor.

**Request No. 5:** All records that show when and how HST (sub)vendor[s] and agent scrubbed lead lists against [NatGen's] internal do-not-call list. (Alteration original.)

In response to these Requests, NatGen objected on the grounds that the requests are overbroad, unduly burdensome, disproportionate to the needs of the case, and seek documents irrelevant to Mr. Ailion's claim against HST. EXH. 1. NatGen also objected to Requests 4 and 5 as duplicative of requests made to HST (*see* Part II., *infra*). These requests all relate to Mr. Ailion's "coordination" theory, which the Seventh Circuit has rejected. *Dish Network*, 954 F.3d at 976. Producing documents as a third-party in support of a legal theory that is not viable is definitionally burdensome, and unduly so. *See Little*, 2020 WL 1939358, at *2; *Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004) (quashing subpoena seeking records of "little, if any probative value").

In addition, in Request 5, Mr. Ailion seeks information related to how HST's agents "scrubbed" against NatGen's do-not-call list. Again, that has no relevance to the suit against HST. But in any event, HST's agents would be in the best position to identify what data they "scrubbed" and when, not NatGen.

**II.  Mr. Ailion's requests for NatGen's policies and procedures seek documents completely within the parties' control and impose an undue burden.**

Mr. Ailion next asks the Court to compel production of NatGen's policies and procedures, as well as "all associated" documents, and NatGen's communications with James Martelo, one of HST's independent agents. ECF 114 at 10–12. While facing the same relevancy shortcomings discussed above, these Requests unduly burden NatGen by seeking to obtain materials over which HST exercises custody and control:

>**Request No. 3:** [NatGen's] do-not-call policy and all associated instructional communications, training materials, handbooks, policy, practice, and procedure documents you provided, made available to, or otherwise required compliance with, as to HST (sub)vendors and agents.
>
>**Request No. 6:** All communications with or concerning James Martelo or JRM Health Insurance Advisors, with respect to lead generation, telemarketing, or business development.

In response to these Requests, NatGen objected that these requests were overbroad, unduly burdensome, disproportionate to the needs of the case, and seek documents irrelevant to Mr. Ailion's claim against HST. <u>Exh. 1</u>. Additionally, NatGen objected to Request 3 as duplicative of requests made to HST. *Id.*

Mr. Ailion's arguments in this section spiral outwardly from the fact that HST uses NatGen's do-not-call policy. ECF 114 at 11. But the fact that HST utilizes one NatGen document in its business does not swing open the door to full-blown discovery of NatGen's business. Rather, the universe of relevant documents in this case about *HST's actions and procedures* is unchanged by that fact: the documents potentially relevant to HST's actions and procedures are those documents in HST's possession (and are the subject to a separate motion to compel filed by Mr. Ailion). Any NatGen document that HST lacks access to is not relevant in the slightest because, as Mr. Ailion suggests, only those NatGen documents actually possessed by HST may "allow Plaintiff to know what practices HST's agents were supposed to be following." ECF 114 at 11. NatGen documents that are not in HST's control do not shed any light on such practices. NatGen, as a third-party, cannot be compelled to produce documents that are either irrelevant or that are in HST's possession.

Finally, regarding Mr. Ailion's request for NatGen's Do Not Call policy, Mr. Ailion already has that policy—it was attached to his complaint.

### III. Mr. Ailion's requests for NatGen's documentation of complaints do not seek relevant documents but impose an undue burden.

Mr. Ailion also asks the Court to compel production of NatGen's communications and documents related to "complaints" received and disciplinary action regarding HST. ECF 114 at 12–13. Because these Requests, likewise, seek information that is irrelevant and in a party's possession, these Requests unduly burden NatGen:

> **Request No. 7:** All communications and documents relating to complaints of any kind (*e.g.*, consumer, regulatory, pre-litigation, litigation), concerning telephone communications by any HST agent or (sub) vendor to a person who allegedly did not want or consent to receive such calls, and any associated investigation or action taken by [NatGen] (or others on [NatGen's] behalf) with regard to such.
>
> **Request No. 8:** All documents pertaining to any disciplinary action [NatGen] took as to any HST agent or (sub)vendor arising from telemarketing on [NatGen's] behalf.

In response to these Requests, NatGen objected that these requests were overbroad, unduly burdensome, disproportionate to the needs of the case, and seek documents irrelevant to Mr. Ailion's claim against HST. E<span style="font-variant:small-caps">xh</span>. 1. Additionally, NatGen objected to Request 7 as duplicative of requests made to HST. *Id.* With Requests 3 and 6, these requests seek documents that—to the extent they exist, are relevant, and may be discoverable—would be in HST's possession (*see* Part II., *supra*).

Mr. Ailion's arguments in this section assert an intention to discover NatGen communications *with HST*—communications which should be in HST's possession. ECF 114 at 13. Mr. Ailion should seek such discovery from HST, a party to this case.

– 8 –

And, indeed, he has. Since Mr. Ailion can seek and has sought this discovery from a party to this case, his request to NatGen is definitionally burdensome. *Tresona Multimedia, LLC v. Legg*, No. 15-cv-4834, 2015 WL 4911093, at *3 (N.D. Ill. Aug. 17, 2015) (quashing burdensome subpoena where documents sought werw possessed by a party to the action); *accord Parker*, 291 F.R.D. at 188.

### IV. Mr. Ailion's requests for documents and communications related to Adam Ailion are not relevant and impose an undue burden.

Mr. Ailion finally asks the Court to compel production of "[a]ll data, communications, and other documents relating to Plaintiff or his phone number." *See* Request 1; ECF 114 at 14. NatGen previously objected that this Request is overbroad, unduly burdensome, disproportionate to the needs of the case, and seeks documents irrelevant to Mr. Ailion's claim against HST. E<small>XH</small>. 1. This request, too, seeks documents, the relevant, discoverable set of which would be in HST's possession.

Mr. Ailion's arguments over this Request do not address the untargeted overbreadth of the Request. Instead, Mr. Ailion writes the production sought "is plainly relevant in this case," and "any materials NatGen has about Plaintiff are necessarily germane to the case." ECF 114 at 14. But the examples Mr. Ailion provides for the supposed relevance of such production defeats his argument. He suggests that NatGen may possesses documents "showing whether and when Plaintiff was added to a do-not-call list." *Id.* Presumably, Mr. Ailion means NatGen may have documents regarding NatGen's do-not-call list; if that is the case, NatGen's do-not-call list is not relevant as demonstrated by the Court's order dismissing NatGen and finding no injury traceable to NatGen. ECF 56 at 16. If Mr. Ailion seeks

– 9 –

to discover information about HST's do-not-call list, it is improper for him to seek that information from NatGen.

Each of Mr. Ailion's requests reveal his interest in obtaining from NatGen that which should be in HST's possession. It is improper to burden NatGen with collection, identification, and production of documents that are irrelevant or in the control of a party to this case. Plaintiff's Motion to Compel NatGen's production should be denied for the reasons stated here.

## V. Mr. Ailion does not move the Court to compel deposition of NatGen's corporate representative.

Mr. Ailion's Motion to Compel references his intention to depose NatGen regarding several topics and the documents of which his Motion seeks to compel production. ECF 114 at 14–15 ("Plaintiff . . . logically needs the documents responsive to his production subpoena before deposing NatGen about them."). Although Mr. Ailion does not move to compel such a deposition at this time (and NatGen reserves its right to object thereto at the appropriate time), NatGen's response to such a motion would include, without limitation, the same objections made here: NatGen is not a party, NatGen's actions are irrelevant, and injury to Plaintiff is not fairly traceable to NatGen. Further, to the extent that Mr. Ailion has asserted the importance of the requested documents to a corporate deposition, the Court's denial of this motion would moot the need for the deposition.

Dated:  April 29, 2024

Respectfully submitted,

*/s/ John K. Theis*
Rodney Perry
John K. Theis
Thanin O. Stewart
**RILEY SAFER HOLMES & CANCILA LLP**
70 West Madison Street, Suite 2900
Chicago, Illinois 60602
Telephone:   312.471.8700
Facsimile:   312.471.8701

*Counsel for Non-Party National General Holding Corp.*