# EXHIBIT 2

```
 1                 IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                       EASTERN DIVISION

 3
     ADAM AILION, individually and on    )  No. 21 C 6231
 4   behalf of a class of others         )
     similarly situated,                 )
 5                                        )
                     Plaintiff,           )
 6                                        )
                vs.                       )  Chicago, Illinois
 7                                        )
     HEALTHCARE SOLUTIONS TEAM, LLC,      )
 8                                        )  June 13, 2024
                     Defendant.           )  10:17 a.m.
 9

10                   TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HON. JEANNICE W. APPENTENG, MAGISTRATE JUDGE
11

12   APPEARANCES:

13   For the Plaintiff:    MR. DANIEL J. MAROVITCH
                           Burke Law Offices, LLC,
14                         909 Davis Street, Suite 500,
                           Evanston, Illinois  60201
15

16   for the Defendant:    MR. JOHN K. THEIS
                           Riley, Safer, Holmes & Cancila LLP,
17                         70 West Madison Street, Suite 2900,
                           Chicago, Illinois  60602
18

19

20

21

22

23                       PATRICK J. MULLEN
                       Official Court Reporter
24                  United States District Court
               219 South Dearborn Street, Room 1412
25                   Chicago, Illinois  60604
                         (312) 435-5565
```

```
 1      (Telephonic proceedings on the record.)
 2           THE CLERK:  21 CV 6231, Ailion versus Healthcare
 3      Solutions Team LLC, et al.
 4           THE COURT:  Hi.  Good morning.  This is Judge
 5      Appenteng.  Please put your appearances on the record,
 6      beginning with the plaintiff.
 7           MR. MAROVITCH:  Good morning, Your Honor.  This is
 8      Dan Marovitch for the plaintiff.
 9           MR. THEIS:  Good morning, Your Honor.  This is Jack
10      Theis for defendant.
11           THE COURT:  Okay.  Anybody else on the line?
12           MR. THEIS:  No, Your Honor.  My colleague Rod Perry
13      is going to join.  He's in another hearing, so he will be a
14      little late.
15           THE COURT:  Okay.  All right.
16           MR. MAROVITCH:  That should be it.
17           THE COURT:  Just hold on one second.  Okay.  Thank
18      you.
19        (Brief pause.)
20           THE COURT:  Okay.  So we had an opportunity to review
21      the revised chart as well as the joint status report itself
22      and the stipulated or the red-line of the stipulated
23      electronic discovery agreement.  So thank you for sending
24      those.  Just off the top, I would say that the Court does
25      appreciate the parties' continued efforts at narrowing the
```

1    disputes, and I appreciate that some disputes, at least from

2    the Court's perspective, you know, shouldn't have been things

3    that brought -- shouldn't have been things that would be

4    brought to the Court are no longer before the Court.  So the

5    Court appreciates that.  However, we still have some ways to

6    go.

7            You know, just generally speaking, I still do think

8    that, you know, some of these disputes are premature to be

9    brought before the Court and that the parties, you know, could

10   still work together to resolve some of these issues.

11   Unfortunately, these are the bumps that come with discovery

12   and, you know, you just have to work through them in my

13   opinion before bringing them to the Court.

14           But, nonetheless, we are here, and so certainly I can

15   appreciate that there's the issues that the parties have with

16   their ESI, which is understandable and I'm happy to help and

17   work those things out, and we will.  So we will attack this in

18   this way today.

19           First we will deal with some of the disputes or

20   resolve some of the disputes that I think are overarching and

21   that will give direction to some of the other disputes, and

22   then I'll address certain of the disputes that don't

23   necessarily deal with the ESI but just deal with general

24   production of lists or call logs and things like that, and

25   then we'll move on to discuss the ESI piece.

```
 1              Before we do that, I'll ask the parties this.  Have
 2      there been any further communications or resolution of
 3      anything that, you know, can come off of the Court's list to
 4      resolve?
 5              MR. THEIS:  Your Honor, for defendant, yes to
 6      communications, but no resolution, I think that would be the
 7      answer.
 8              THE COURT:  Okay.
 9              MR. MAROVITCH:  Yes.
10              THE COURT:  And I will ask both of you to speak up.
11      If you could, please, you know, get closer to your phones or
12      computers or whatever, but I need you both to speak up a
13      little bit louder.
14              Okay.  So then that was -- who was that that just
15      spoke and said there have been communications but no further
16      resolution?
17              MR. THEIS:  This is Jack Theis for the defendant.
18              THE COURT:  Okay.
19              MR. THEIS:  And I'll speak up going forward on the
20      call.
21              THE COURT:  Okay.  Yes.  So, Mr. Marovich, did you
22      say that you agree with that?
23              MR. MAROVITCH:  Yes.  This is Dan.  Yeah, I agree
24      with that.  I do think there's probably some more room that
25      the parties can work through, particularly on the ESI, but I
```

1   understand that we can talk about that at the appropriate

2   time.

3           THE COURT:  Okay.  So let's begin with what's on your

4   chart in terms of the redaction and plaintiff's request that

5   HST remove non-privileged redactions to the responsive

6   documents, which is an issue that was throughout.  The Court

7   would grant that, that request, because as the Court

8   understands, there is a protective order in this case that has

9   been entered, and I don't see and I haven't seen any

10  reasonable justification on defendant's part as to why the

11  protective order is not sufficient.  I'll hear from defendant

12  at this time, though.

13          MR. THEIS:  Sure.  Your Honor, thank you.  This is

14  Jack Theis for defendant.  So, yeah, we've agreed to produce

15  the documents that we previously produced with redactions.  We

16  are agreeing to take out the redactions.  The part that we are

17  saying we haven't produced yet but we would like to produce in

18  a redacted format is a spreadsheet that contains the names,

19  phone numbers, email addresses, addresses of -- I don't have

20  the exact number but sort of tens of thousands of individuals

21  that are included on a spreadsheet which is an export of HST's

22  Leadmaster.

23          What we're proposing that we give them is all of the

24  other data that's included in there on the spreadsheet.  So

25  it's going to be the telephone numbers, you know, the agent

1    names that called the individuals.  These are basically call

2    disposition entries for a variety of different individuals who

3    have received phone calls and for whom the agent has indicated

4    that this person should be -- that the disposition should be

5    DNC or do not call.

6         The concern that we have is this is just a vast

7    amount of data of names, addresses, and zips.  You know, we

8    just don't see the -- as sort of a starting point, we don't

9    see what the relevance is of giving all of that information

10   for those tens of thousands of individuals.  You know, we have

11   some concern about the handling of PII.

12        But I think, you know, ultimately, you know, Your

13   Honor made the point that there's a protective order in the

14   case.  If we're ultimately ordered to produce it, if we need

15   to produce this without the redactions for these, you know,

16   tens of thousands of individuals, we would just ask for some

17   sort of order that, you know, the plaintiffs can't use this

18   list that we're providing to them with the contact information

19   for these thousands of people to communicate to them about,

20   you know -- to obtain, you know, additional clients for

21   example.

22        You know, the protective order is obviously limited

23   to this case and is only about this case.  We have some

24   concerns that that's going to be what they're really getting

25   at here.  They don't just want the phone numbers to compare

1   them against the do not call list, which would be what would

2   be relevant for this case, but they're looking for something

3   much broader than that is our concern.

4           So that would be our proposal on that.  If we are --

5   if we need to produce that entire list, the spreadsheet

6   unredacted, we would just ask that that would be accompanied

7   by an instruction that the parties can't use this list to,

8   again, obtain new clients to communicate with these

9   individuals that are there.

10          THE COURT:  Mr. Marovitch, what's your position on

11  what I hear as a request to amend the confidentiality order?

12          MR. MAROVITCH:  Thank you, Your Honor.  I'm sorry.

13  It sounded like --

14          THE COURT:  It seems reasonable, the request to amend

15  the confidentiality order for the use and purpose of this

16  data.  What's your position?

17          MR. MAROVITCH:  Thank you, Your Honor.  I'm sorry.

18  This is the first I'm hearing that, that position.  I think

19  that plaintiff is amenable to that.  My only thought is, you

20  know, if it's for the purpose of obtaining clients, that

21  wouldn't be our intent anyway.  To clarify defendant's

22  suggestion that we can't communicate with those people to

23  investigate the case, period, like as witnesses, is that --

24          THE COURT:  I can tell you from the Court's

25  perspective that I certainly wouldn't, you know, find an

1   amended order that would state as such.  I mean, we'll get to

2   that because I do talk about it in some of the other rulings.

3   Certainly defendant -- plaintiff will have the right to depose

4   and speak with individuals, any number of individuals that are

5   in the purported class about their experiences and how that

6   relates to the plaintiff's claims.

7          So I think, you know, the Court would approve a

8   confidentiality -- an amendment to the confidentiality order

9   that would carve out perhaps the specific uses or make certain

10  note about the areas that are not objectionable, if you will,

11  but I'll allow Mr. Theis to answer for himself.

12         MR. THEIS:  Yeah, I think that approach makes a lot

13  of sense, and we can come up with language that's addressing

14  the specific current concern that we have about this.  You

15  know, if this case goes away, we just don't want to have tens

16  of thousands of additional cases coming down the road with

17  additional new clients based on the production that we're

18  making with this list.

19         You know, we can prepare, we can prepare language to

20  amend the confidentiality order along these lines to make it

21  clear, and I think we can -- you know, I'm not suggesting

22  exactly what you're saying, Your Honor.  I'm not suggesting

23  that they cannot contact people or businesses in this case.

24  That obviously is not what we're seeking here, and we can

25  prepare that language and provide it to opposing counsel.

```
 1          MR. MAROVITCH:  And this is Dan Marovitch for the
 2    plaintiff.  I think that sounds, you know, fine from
 3    plaintiff's perspective.  You know, that's not our intent in
 4    needing the full context for the responsive docs.
 5          THE COURT:  Okay.  So then the parties have agreed to
 6    draft and come to an agreement on some language that amends
 7    the confidentiality order to resolve this issue on the
 8    documents because the Court's order would be that the
 9    documents are going to be produced without redactions and can
10    be that Leadmaster list.  So if that's what you needed to hear
11    first in order to work on the confidentiality order and it
12    sounds like both of the parties are in agreement to that, then
13    I believe that that issue in terms of redaction is resolved.
14          Is that correct, Mr. Marovitch?
15          MR. THEIS:  Yes.  Oh, sorry.
16          MR. MAROVITCH:  That's correct, yes.
17          THE COURT:  Okay.  All right.  So now we're going to
18    move on to interrogatories.  Well, I just want -- I'll go
19    through this first because I want to confirm that RFP 12 has
20    been withdrawn, correct?
21          MR. MAROVITCH:  Your Honor, this is Dan Marovitch for
22    the plaintiff.  I think what we anticipate withdrawing is
23    subject to the parties getting the -- you know, resolving the
24    ESI protocol.  I mean, it's kind of weird.  We're in a weird
25    limbo state with a lot of these requests.  We essentially have
```

1    an understanding that it will be resolved through the ESI

2    protocol.  We just haven't come to an agreement on the ESI

3    protocol.  So that's the hang-up.

4           THE COURT:  Okay.  Okay.  So then 13 is the same.

5    It's withdrawn subject to the ESI protocol.

6           MR. MAROVITCH:  Again, this is Dan Marovitch for the

7    plaintiff.  Yeah, that's correct, Your Honor.

8           THE COURT:  Then you say -- and, again, I need to get

9    a better understanding of this.  So once the ESI protocol and

10   custodians are agreed upon, you're saying that you don't need

11   to revisit that, or is it after the production of documents

12   and materials responsive to ESI?

13          MR. MAROVITCH:  Your Honor, I think it would be the

14   production just because the ESI protocol kind of anticipates a

15   cooperative process to, you know, try to sort things out.  So,

16   you know, for these kinds of requests where we more or less

17   have agreement, we just need to kind of get over the hurdle of

18   the protocol itself, getting the custodians, getting the --

19   correcting the keyword search terms, and then we expect or

20   plaintiff expects that we'll no longer be at issue after they

21   produce.

22          THE COURT:  Okay.  Because here's the thing.  The

23   reason I'm asking is we need to resolve this motion.  So what

24   I'm going to do is this.  To the extent that they're withdrawn

25   subject to the ESI protocol, I'm going to deny those without

1  prejudice such that -- you know, which is why I asked the

2  question, and you're saying it's after the production.  So

3  after the ESI protocol, you then will negotiate that.  You'll

4  figure out what the terms are, do the search.  Then you'll do

5  the production, and then upon the production if there are

6  additional concerns or issues, as is the issue in any case,

7  right, you would or you could either file -- you know, you

8  won't just file a motion.  You'll discuss it with the Court

9  first.

10         But you'll waive those concerns and in that way, you

11 know, your previous request won't be denied, you know, with

12 prejudice.  It's denied without prejudice.  So to the extent

13 it needs to be resurrected or raised in a different way, it

14 can and will be, but I want to resolve this motion.  Okay?

15         MR. MAROVITCH:  That makes sense, Your Honor.  Thank

16 you.

17         THE COURT:  All right.  So then, all right,

18 interrogatory number 1.  So I have some questions for the

19 defendant here.  From the Court's perspective, I don't see how

20 defendant can reasonably say that this material wouldn't be in

21 its possession, custody, or control in that it does have a

22 legal right to obtain this information.  So I'd like to hear

23 argument on why defendant says that it could not or does not

24 have a legal right to obtain this information.

25         I do note that, you know, in there, in the response

1    defendant cites that nothing in the independent agent

2    agreement gives HST control over the documents that are in the

3    agent's possession, but the opposite is also true.  I don't

4    see and you haven't cited where it says that those agreements

5    say that HST does not and cannot obtain it, that HST does not

6    have a legal right to obtain information, particularly

7    information that appears from a business perspective it would

8    need to know or has the right to know with regard to these

9    agents.

10           So go ahead, Mr. Theis.

11           MR. THEIS:  Thank you, Your Honor.  Right, so the

12   first point is exactly the point that you said about what the

13   agents -- I think what was termed as a burden issue, which is

14   that there's over 2,000 agents and they're asking for us to

15   ask all 2,000 of those agents to gather all of their call logs

16   for at minimum a seven-year period and then provide those to

17   us.

18           So I'm envisioning what they're asking us to do is

19   send out 2,000 different emails, and then from the 2,000

20   emails that we get back seeking this information from them

21   we'll go through each one of those emails and see whether or

22   not they've adequately provided a call log for that time

23   period.  That is just wildly overburdensome for what needs to

24   be done in this case from our perspective.

25           The alternative is that -- and frankly, I don't even

1   know that that's exactly what they want us to do, but that

2   seems like what their motion to compel is asking us to do.  In

3   addition to that, you know, they're specifically going to deal

4   with agents that control the call data.  They have their own

5   call logs.

6          In this particular case, Jim Martelo is the agent

7   that called plaintiff.  They sent him a -- they asked him for

8   who he uses for his calls.  They subpoenaed that third party.

9   They were able to obtain that information.  You know, if there

10  is a subset of specific agents, if there's specific agents

11  that they want us to -- that they want to do a similar, you

12  know, process, we can help them, you know, find those agents

13  and we can ask those specific agents, you know:  Do you have

14  call logs and, if not, who do you use for calls, and can you

15  obtain call logs in this case?

16         You know, so that more targeted approach might be

17  something that we could, you know, move forward with.  But

18  just the full blast of, you know, sending a blast email to all

19  2,000 agents and asking them for all of their call logs for

20  seven years is just -- we don't see what benefit that is going

21  to be that's going to get this case to some sort of

22  resolution.

23         THE COURT:  Mr. Marovitch, just so we're all clear,

24  yes, we are just talking about burden, and thank you for, you

25  know, recognizing that.  Mr. Marovitch, just to talk about the

1    time period first, the seven years, is that the length of time

2    you're asking for with this information?

3           MR. MAROVITCH:  Thank you, Your Honor.  This is Dan

4    Marovitch for the plaintiff again.  We do need a -- so the

5    statute of limitations for TCPA cases goes back four years,

6    and generally in these cases and in this case where we're

7    asserting, you know, or seeking injunctive relief, you need

8    forward-facing evidence to establish the, you know, ongoing

9    violation and establish -- you know, to support ratification

10   and willfulness, you kind of do need to have, you know, a

11   temporal scope that extends backwards and forwards from the

12   date of filing.

13          So we're, you know, amenable to cutting it.  You

14   know, we can talk about limiting the scope, but just for

15   purposes of the case we do need to have a temporal scope that

16   extends backwards and is forward-facing from the date of

17   filing.  I guess the long and short of it is I'm not, you

18   know, dead set on having the full seven years, but we need,

19   you know, an appropriate amount of a time period that covers

20   the, you know, pre-suit, pre-filing, post-filing calls.

21          THE COURT:  Okay.  And, you know, it sounds like with

22   your response to the question, Mr. Theis, are you asking that

23   they send emails to all of their agents to gather this

24   information?  Is that the information you're looking for?

25   Well, I mean, that is, right, the call logs?  I'm sorry.  Yes,

1    they're call logs.

2         MR. MAROVITCH:  Thank you, Your Honor.  Yes.  So we

3    do need the, you know, underlying telemarketing data for the

4    case in order to prove our, you know, or support our prima

5    facie case.  During, you know, prior conferrals, plaintiff had

6    proposed some ways in which we might reduce that burden down,

7    including an appropriate sampling of agents who were

8    conducting telemarketing and were, you know, maintaining a DNC

9    list.

10        Then another proposal that we had was maybe even

11   before that to maybe just if HST can have its agents identify

12   where their call data is being stored, you know, where the

13   class data is being stored -- and I think that's actually

14   responsive to another one of our requests -- that might

15   identify a way that the parties can obtain that data more

16   efficiently than going agent by agent.

17        For example, you know, there's only so many, you

18   know, call center vendors, CRM vendors out there.  So if, you

19   know, 100 vendors -- or 100 agents were using VICIdial call

20   center solutions, you know, we can subpoena VICIdial instead

21   of, you know, dealing with the agents individually in order to

22   obtain their IDNC call and lead information.

23        So those were kind of our proposals for reducing, you

24   know, the burden that HST has asserted, but aside from that, I

25   mean, HST has the ability and it's represented that it does

1   regularly send out mass emails to its agents. It doesn't seem

2   like it would be -- you know, it seems like it is doable for

3   HST to at least get that process started and see what the

4   burden really is rather than just kind of saying, oh, it's

5   going to be too hard without really trying.

6           THE COURT: Yes. So frankly, you hit the nail on the

7   head there. I mean, you had a couple of weeks, and I believe

8   I said this at the start of the very first hearing that we

9   had. There were a lot of burden arguments, but there's been

10  no specificity or the parties had not at least spoken, which

11  is why I gave you time to speak about it, about identifying

12  the specific nature of the burden, which is required under the

13  rules and required under the law in order to articulate these

14  burden objections.

15          It sounds like still there has been no specific

16  articulation other than there's 2,000 of them and we'd have to

17  send an email out, which I send out emails to a list of 500 or

18  more people and can do it. The question is, you know, how

19  long would it take and who would actually respond? You know,

20  have you tried to at least email 10 or 15 of them, and have

21  they responded and what did they provide? There has been even

22  none of that.

23          So the Court is inclined to grant this in that the

24  request for information is appropriate. The Court is mindful

25  of the burden and the expense argument, and plaintiff did in

```
1    my opinion raise a very reasonable resolution of trying to

2    work with the agents to figure out where their data is stored

3    so that perhaps there could be a more targeted approach.

4            So, you know, I'll hear from defendant about their

5    response to plaintiff's proposals in that regard.  Otherwise,

6    it will be just a flat-out it's granted and you'll have to

7    figure out how to, you know, get information from these 2,000

8    individuals, and we will narrow the time to two years.

9            MR. THEIS:  Thank you, Your Honor.  This is Jack

10   Theis for the defense.  Yeah, certainly sending the email is

11   not the issue.  It's the part that happens next.  It's taking

12   the call data that we receive, to the extent we get it back,

13   and then ensuring it's what plaintiffs are seeking and then

14   providing that information.

15           You know, to take a step back, I think, you know, the

16   problem that we're facing here is we're not totally sure, you

17   know, when these are independent agents, how this connects

18   back to the claim against HST when we're talking about what

19   this burden is.

20           You know, certainly, I think I can understand what

21   the Court's point is on where we're heading on this.  What I

22   think might make sense is for us to add two steps to this, to

23   first do what Mr. Marovitch suggested with another request, to

24   say, you know, or to ask the agents, all 2,000 of them, what

25   specific entities they use to place calls.  I think that's
```

 1    what they're seeking.  I think that's what the other request

 2    is.

 3              We are aware of some of those through this case, but

 4    we don't know the full scope of those.  There's going to be a

 5    pretty substantial expense associated, I think, with still

 6    going through that process and reviewing those notes and

 7    providing them to opposing counsel, and I just want to --

 8    before we go through that process, I just want to make sure we

 9    understand, you know, that that's going to be -- that that

10    certainly is going to result in something that actually,

11    again, brings this case to a resolution or brings this case

12    towards an identification or an understanding of what the

13    scope of the class would be.

14              THE COURT:  All right.

15              MR. THEIS:  So I think again --

16              THE COURT:  So are you saying now you're raising

17    relevance objections?

18              MR. THEIS:  No, Your Honor, only in just the

19    discussion about burden and whether it's disproportionate to

20    the needs of the case.  I mean, we're talking about the cost

21    that we are going to incur of, you know, basically assigning

22    someone at the company to review the 2,000 or the thousands of

23    emails that are going to come in from our agents to, you know,

24    categorize all of the different entities that they use for

25    placing calls.

1         At the end of the day, what is the -- how does that

2    directly relate to what the plaintiff needs in this specific

3    case?  That's the only -- I'm not raising a resolution

4    objection.  I'm just saying in the proportionality analysis we

5    are talking about the burden that's associated with this.

6         THE COURT:  And, Mr. Marovitch, what's your answer?

7    What's your response?

8         MR. MAROVITCH:  Thank you, Your Honor.  Well, I mean,

9    it's kind of a means to -- well, first off, it is relevant.  I

10   mean, these are the entities that are being used to physically

11   place the calls at issue, or in the case of, you know, if it's

12   a CRM system, it will have lead data, and that's going to

13   serve as the basis for HST's affirmative defense, you know, I

14   presume for consent.  So those entities just themselves are

15   relevant in that sense.

16        I mean, this is just a kind of outside-the-box

17   approach, you know.  We have this burden objection from HST.

18   This seems like it might be a way that would help reduce that

19   asserted burden while getting us what we need.  I can't -- I

20   mean, we can certainly get into it.

21        THE COURT:  Well, I guess the question here --

22        MR. MAROVITCH:  I can't make any promises that we --

23        THE COURT:  Mr. Marovitch, the question is how is all

24   of this, the response that you would get, right, the call

25   data, the call detail, the call logs, how is that relevant to

 1   your claims?  The volume of all of those calls, how is that

 2   relevant to your claims such that the burden for them to

 3   obtain all this information on call logs outweighs -- is

 4   outweighed by its relevance and the needs of the case to the

 5   claims?

 6          MR. MAROVITCH:  Thank you, Your Honor.  So in TCPA

 7   cases like this, the call data is kind of the -- I mean, that

 8   is the data that proves the prima facie case because under,

 9   you know, 47 U.S.C. 227(c)(5) you need to have a -- in order

10   to have a private right of action, you need to establish two

11   calls, at least two calls in a 12-month period that would have

12   violated the regulation.

13          So what we need to do is establish those violations

14   by comparing the call data to the DNC data to identify people

15   at their discretion that were called after a do not call

16   request was made.  So, I mean, this is like the meat of the

17   case.  It's proving that the violations we allege happened

18   did, in fact, happen.

19          Then also, apart from the merits, it's also relevant

20   to class certification because we need it to establish

21   numerosity, predominance, manageability.  I mean, it's like

22   this is the critical data in the case in terms of proving the

23   prima facie elements.

24          THE COURT:  Okay.  Well, for those reasons the Court

25   finds that the request, given the nature and posture of the

1    case and that it's a class case, that it is -- that the burden

2    is outweighed by the relevance and is certainly proportional

3    to the needs of the case.

4         So the question then becomes what's the best way for

5    the parties to go about getting this information, and to me it

6    seems like the burden is on defendant, for you to be the ones

7    who propose the various ways in which you can, you know, get

8    this, get your response, get the responsive information to the

9    plaintiff in a way that would eliminate more expense.

10        I mean, it's actually quite (inaudible) of plaintiff

11   to come up with some of these proposals, you know, but they're

12   entitled and the Court has made a finding that they're

13   entitled to this data and they're entitled to this

14   information.

15        Now, what you can do is, you know, further discuss

16   the best means, you know, for the parties to accomplish this,

17   and it probably would even be more efficient and take less

18   time for plaintiff to get the information in the way plaintiff

19   has kind of proposed possibly seeing it.  There could be a

20   sampling, a sampling of data.  Well, by a sample, you mean

21   you're sending an email to a number of the agents and getting

22   or seeing what the results are, whether it be, you know,

23   having them send all the call data or having them identify the

24   call center or mechanism they use to house all of their data,

25   one of those two ways, right?

1          I'll leave that to the parties to decide because you

2     know your systems and your resources better than the Court.

3     So the ruling is that it is granted, and that would be

4     interrogatory number 1 and RFP numbers 4 and 5.  I'm just

5     checking my notes here.

6       (Brief pause.)

7          THE COURT:  Okay.  Is that right?  Interrogatory

8     number 1 and RFP numbers 4 and 5 are essentially asking for

9     the same or related information, correct?

10         MR. MAROVITCH:  This is Dan --

11         MR. THEIS:  This is -- oh, sorry.

12         THE COURT:  Okay.

13         MR. MAROVITCH:  Your Honor, this is Dan Marovitch.

14    That's right.  Those are the primary class data requests for

15    call data and the lead information.

16         MR. THEIS:  Your Honor --

17         THE COURT:  Okay.  Mr. Theis, you're saying that's

18    not the same?

19         MR. THEIS:  Yeah, I disagree, Your Honor.  So let's

20    look at interrogatory 1.  Interrogatory 1 is asking for call

21    data and disposition information for a very specific number of

22    calls.  It's looking for residential telephone subscribers in

23    the U.S., one, who made a call for the purpose of encouraging

24    the purchase of goods; two, where there was a residential

25    phone line; three, where they asked, you know, whether there

1    was a DNC request; and then, four, where there was more than

2    one call in a 12-month period.  All right?

3            So that is a subset of what we are being ordered to

4    produce.  As I understand the Court's order, we have to find

5    some sort of way to get to or to contact our agents to see how

6    they keep their call data and produce that information.

7    Obviously when they produce the information, they're going to

8    produce a call log, like Jim Martelo did, that's going to be

9    overinclusive of the response to interrogatory number 1, which

10   is asking for a much narrower set here.

11           So what's important here is then if we say to call

12   detail and disposition information for those specific calls,

13   and let's call those calls the calls that are responsive to

14   interrogatory number 1.  Okay?  If you then look at RFP 4,

15   it's then asking for all call-related data for each call

16   that's responsive to 1.  Then if you look at 5, it's asking

17   for all lead data that's responsive to interrogatory number 1.

18           So in order to -- all right?  So in order to not --

19   this is not (inaudible).  What they're looking for is for the

20   calls that are marked for 1, what is the call-related data for

21   that call and what is the lead data related to those calls.

22   So the first thing we have to do is identify which calls are

23   the ones that are responsive to interrogatory number 1.

24           The way to do that is to compare what is on the DNC

25   list to the calls that have been in place, then from there

 1    create a sublist that is X number long, which effectively is a

 2    class list.  You know, I wouldn't -- what plaintiffs would

 3    characterize as the class list, we wouldn't agree to that, but

 4    that's the subset of numbers that are responsive to

 5    interrogatory number 1.  We don't have that yet.

 6         THE COURT:  So, Mr. Theis, I fully understand what

 7    you're saying.  I get it and where you're going.  I mean, it's

 8    one of two things.  You could produce all of the raw data,

 9    right, the DNC lists -- and we'll get to all of that -- and

10    then all of the call logs, then obtain the information and

11    produce it, and then leave it for plaintiff to make those --

12    to basically compare the things and identify basically who

13    their class is, right?

14         Or it's you doing it or defendant doing all of the

15    work, as you know, right?  So taking the larger set of data,

16    comparing it, and then whittling it down to this narrower, you

17    know, list, right?  So it just comes down to who is going to

18    do it.

19         MR. THEIS:  But here's the other thing.  You know,

20    these are independent agents.  They place calls on behalf of a

21    variety of different carriers, you know, parties that have

22    nothing to do with HST, in fact, are competitors to HST,

23    right?

24         THE COURT:  Yes.

25         MR. THEIS:  So the phone numbers, the call logs are

1    going to have a wide variety of completely irrelevant

2    information that the agents are going to provide.  So once we

3    have the -- but, you know, someone is going to have to go

4    through that list and determine that it was a call that was

5    placed where they were seeking to, you know, provide the --

6    sorry -- you know, seeking to encourage the purchase of goods

7    and services through HST.  So they have to figure out is each

8    one of those calls something that was encouraging the purchase

9    of goods and services for HST and all of the other steps that

10   are in interrogatory 1.

11          If we're -- you know, what's happening here is that

12   all of these agents, who again are independent contractors,

13   are being told to provide data that is completely unrelated to

14   HST in a more expansive way, I mean, that really is getting

15   well beyond the scope of this case, and so I think it just --

16          THE COURT:  So some party is going to have to whittle

17   down that information to the usable information.  You know,

18   just because there's a production of information that is not

19   relevant doesn't make -- is not a reason for a party not to

20   produce any information, right?  That happens in most cases or

21   in all cases.  There is a section of material that gets

22   produced that, of course, is not particularly relevant to the

23   case, and what happens is a party that's the producing party

24   can parse it out, take the time to do that, although they

25   don't have to, or they produce everything and then the

1    receiving party has to do the work to narrow it down, whittle

2    it down to the responsive material, the material that they

3    need to support their claim.

4         You know, it all comes down to who's going to do the

5    work and where the burden can ultimately lie.  You know, you

6    have these same types of requests when plaintiffs are upset

7    that they're getting doc dumps, right?  You get all this.  You

8    have the information you need.  You just got to sift through

9    it all to get exactly what it is that you need that will, you

10   know, help support your case.

11        So I think it comes back to what I said earlier.

12   It's that the material in total, there is a responsive set of

13   material that plaintiff is -- that the Court is granting,

14   right, and that plaintiff is entitled to based on its request

15   because it's relevant to the claims and proportional to the

16   case.

17        The question is how are you or how is the defendant

18   going to get that material to the plaintiff.  You can whittle

19   it down into interrogatory number 1, right, and make the list

20   narrow and do those comparisons by pulling the different

21   information, by pulling the DNC lists, by pulling the call

22   logs, and narrowing it down to what this is here, or producing

23   that material to plaintiff and then you can make the reference

24   to the materials that you produced and say that the response

25   is in that material.

1        Someone is going to have to do the whittling.  It's

2  either going to be plaintiff or it's going to be the

3  defendant.  So this is the kind of things that the parties

4  should be able to talk about and decide who's going to do it,

5  but it sounds like you haven't had that conversation.

6        MR. THEIS:  So I think we have had that conversation,

7  and I think the problem, the problem is exactly the same

8  problem that we're seeing here, which is, they've never really

9  given us a clear understanding of what their view is of all

10  call-related data for each call responsive to interrogatory

11  number 1, which spills into many of the other requests.

12        You know, I think what they want it to be is, well,

13  you know, a combination of the call logs of every single HST

14  agent and compare it against the DNC list, leaving the calls

15  that were placed, you know, or not being placed on behalf of

16  HST and are unrelated.  So what I think is -- I'm not trying

17  to make this overcomplicated.  The part I just want to make

18  clear is that 4 and 5 is not the same as interrogatory number

19  1.  They're asking for additional information for the category

20  of calls that are responsive to interrogatory number 1.

21        I agree that, you know, we're willing to -- now that

22  the Court has sort of given direction for this, we'll

23  definitely talk to them about the least burdensome way to get

24  them the information that they're seeking, whether it's

25  through some sort of sampling or some other sort of way.  But,

1    you know, it's still finding that exact sample set of numbers

2    that are responsive to interrogatory number 1 is going to be a

3    very difficult exercise on one of the party's part.

4         THE COURT:  Yes, I understand that.  Okay.  So then

5    interrogatory number 1 is granted.  The motion to compel

6    interrogatory number 1 is granted, as is RFP number 4 and RFP

7    number 5.  I do understand what you're saying, Mr. Theis.

8    Tell me how to pronounce your last name.

9         MR. THEIS:  That's right.  No, it's my fault.  It's

10   Theis.

11        THE COURT:  Mr. Theis, what you were saying, you're

12   right.  It does not ask for the exact same thing, you're

13   correct.  Nonetheless, those are granted, and I'll leave it to

14   the parties to discuss further how they can accomplish that.

15        Okay.  So with RFP number 8, let me go back.  I'm

16   going to go back to your chart.  Bear with me here.  I've got

17   a number of lists.

18     (Brief pause.)

19        THE COURT:  Okay.  So RFP number 8, in the end -- and

20   I just need a little clarity from the parties on this -- in

21   the end plaintiff proposes that HST produce its complete

22   Leadmaster DNC disposition data to the present.

23        Oh, sorry.  Let's go back.  I forgot.  In terms of

24   narrowing of the timeframe for interrogatory number 1, did

25   HST or did you -- I didn't see in any of the papers a proposal

```
 1    for a narrowed timeframe.  Did you have one?
 2            MR. THEIS:  I mean, I think we would propose the four
 3    years prior to the filing of the complaint, which should be, I
 4    believe, November of 2017.  I can get the exact date, but
 5    November of '17 until the date the complaint was filed.  That
 6    would be, you know, some sort of limitation on the burden,
 7    although --
 8            THE COURT:  So you're saying four years, and
 9    plaintiff has said that they need at least time going back and
10    time going forward.
11            MR. THEIS:  We would agree to the going back and
12    going forward.
13            THE COURT:  From the time of the complaint.
14            MR. THEIS:  Correct.
15            THE COURT:  And does the forward period work,
16    Mr. Marovitch, to show a willfulness in terms of damages?  Is
17    that what you're saying?
18            MR. MAROVITCH:  Thank you, Your Honor.  Yeah, so the
19    forward-facing evidence is necessary because we have, you
20    know, a request for ongoing forward-facing injunctive relief.
21    It's also relevant to establishing ratification, ratification
22    based on HST's, you know, allowing the calling to continue
23    despite being on notice.  It's also relevant to whether
24    enhanced damages or treble damages are appropriate based on
25    knowing and willful violations.
```

1          THE COURT:  Okay.

2          MR. MAROVITCH:  I mean, like I said, we don't --

3   yeah.

4          THE COURT:  So the Court is going to order that it's

5   four years total, three years prior to the suit and then a

6   year going forward from the date of the suit.  So four years

7   total, three going back, one forward, and the parties can

8   figure out the exact, you know, dates.  Okay.  So that's to

9   RFP number 8.

10          Again, so as I read all the papers, it's been reduced

11   down to plaintiff proposes that defendant produce the complete

12   Leadmaster DNC disposition data up to present without

13   redaction and that the parties revisit this request, if

14   necessary, after the ESI protocol production.  Is that the --

15   that's plaintiff's proposal.  What's defendant's?  Please let

16   me know if I've characterized that right and then, if so,

17   what's defendant's response to that?

18          MR. MAROVITCH:  Thank you, Your Honor.  This is Dan

19   Marovitch for the plaintiff.  I think that's right.  So my

20   understanding is they're going to be producing -- or they

21   produced the black list.  So interrogatory 8 is asking for

22   HST's DNC information.  To my understanding, they've produced

23   the black list already.  They're representing that they're

24   going to produce the other DNC information that they have in

25   Leadmaster.  I think their only dispute is that it would be

1    unredacted.

2            THE COURT:  Oh, okay.

3            MR. THEIS:  Right.

4            MR. MAROVITCH:  And then the other issue is just the

5    ESI stuff, and I think it makes sense to see what the ESI --

6    what comes through the custodian searches to make sure that we

7    have everything just because of the issue with the lost data.

8    So I guess the long and short of it is I think this is one

9    where it's just dependent on how the ESI works out, and then

10   we'll revisit it later, if necessary.

11           THE COURT:  And defense counsel?

12           MR. THEIS:  Right.  My understanding -- this is John

13   Theis for the defense.  My understanding is that, yes, I think

14   the only outstanding issue here was the redactions, and that

15   issue has been resolved.

16           THE COURT:  Okay.  So I can deny it without

17   prejudice, correct?  That's what we're going to do with this

18   one, is that right?

19           MR. THEIS:  That seems right.

20           MR. MAROVITCH:  Dan Marovitch for plaintiff.  That

21   makes sense, Your Honor.

22           THE COURT:  Okay.  Yes.  Because then, yes, if

23   there's an issue, you revisit it.  We've already -- we've kind

24   of granted overall the redaction issue.  Okay.  All right.

25           All right.  So then where does that leave us with 9?

1     (Discussion off the record.)

2          THE COURT:  Oh, this is for the third parties, right.

3     Okay.  So as I read defendant's argument, again just to be

4     clear, the parties are still in dispute about RFP 9, correct?

5          MR. MAROVITCH:  Your Honor, this is Dan Marovitch for

6     the plaintiff.  Yes, we're in dispute over 9.  I think it's

7     tied in with the other class data requests because, you know,

8     as I've explained, you need to compare the class call data

9     against the IDNC data to identify the violations at issue.  So

10    while we understand that HST is willing to produce, you know,

11    the IDNC data that it has in its physical possession, it's

12    kind of a similar position that, you know, obtaining that

13    information from its downlines, that the parties remain in

14    dispute about that.  But that's kind of where things have

15    landed for request for production 9.

16         MR. THEIS:  If I may briefly, Your Honor?

17         THE COURT:  Yes, go ahead.

18         MR. THEIS:  Judge, as for 9, right.  So again, we

19    have produced our black list, HST's black list.  We're going

20    to produce the DNC disposition information from Leadmaster.

21    So, again, the case is against HST, so that's what we're

22    producing.

23         What they're asking is for the DNC lists and

24    associated data for all of the agents and, you know, these are

25    independent contractors.  It's unclear.  The case is against

1  HST, not the agents, the independent agents that are

2  independent contractors.

3        The fact that, you know, we're not -- the DNC list is

4  the DNC list for HST.  They can compare the call data against

5  that list, and that potentially could be -- you know, will get

6  towards the list, the list that they're seeking to have for

7  the class, but we don't know why they're seeking this for the

8  independent agents.  We're only, you know, responsible for our

9  own policies and procedures, and HST's list is HST's list.

10        If they want to obtain this from agents, like they

11  tried to ask Jim Martelo for this, they can do that but,

12  again, you know, they can raise their own objections to that.

13  But, you know, we have made it clear that there's no -- we

14  don't see what the connection is between the independent

15  agents' IDNC lists.  This case is about HST's IDNC list.

16        THE COURT:  I'll let Mr. Marovitch respond before I

17  rule, and I'd like to have a response to that.  So go ahead,

18  Mr. Marovitch.

19        MR. MAROVITCH:  Thank you, Your Honor.  Well, this

20  case is not limited to just the data that physically exists in

21  HST's black list.  You know, it's the theory of the case that

22  the violations at issue arise because of HST's deficient IDNC

23  practices.  In fact, that's been a part of the violation under

24  the regulation, that it wasn't maintaining proper IDNC

25  compliance practices, including coordinating IDNC requests

1    with and amongst its telemarketers, the agents.

2         So the reason why we need the IDNC list, the IDNC

3    information that the agents had received, is because that's

4    information that was supposed to be in HST's list.  It's

5    what's supposed to be coordinated with HST in order to comply

6    with the statute, because if it's not then you're just going

7    to end up with additional violations.

8         So, you know, what we envision is, you know, having

9    this, you know, and creating a consolidated do not call list

10   of the IDNC information HST was supposed to have and then

11   running that against the -- running the call data against that

12   to identify the violations.

13        So it's not -- I mean, the 615 individual phone

14   numbers in HST's black list are not what this case is limited

15   to.  You know, the point is to get HST into compliance, and

16   that requires coordination with its agents and obtaining their

17   do not call information and ensuring that those consumers

18   aren't called.  So that's why this information is critical.

19   It's just -- I mean, it is like the part that -- it's just

20   like the call data is needed to prove that the calls happened,

21   and the DNC data is needed to prove that the violations

22   occurred.

23        THE COURT:  Okay.  Well, the Court agrees with the

24   plaintiff on this point, and I believe I raised it and said at

25   the last hearing, you know, to the extent that there's like a

1   legal dispute about whether or not it's a violation of the law

2   to the extent that HST coordinated or failed to coordinate

3   with their agents, that is nonetheless an allegation in the

4   complaint, and at the discovery stage the Court will allow

5   discovery into coordination of DNC lists as among particular

6   people that HST is contracting with, if you want to call them

7   independent contractors or not, you know, the people that

8   they're contracting with to do the work.

9         This is, again, HST actually -- to my understanding,

10   we talked about this at the last hearing as well.  It's people

11   that do the work itself and contract with these individuals to

12   make these calls to sell the services and/or products.  So for

13   the reasons that plaintiff stated, the Court agrees with

14   those.

15         So where does that leave us?  That leaves us with

16   that plaintiff's request for this information in number 9 is

17   granted.

18         MR. THEIS:  Can I just -- I need to make a clean

19   record on this, Your Honor, because this is a really important

20   one.  So are we going to -- is this one where we're going to

21   work with plaintiff's counsel to try to figure out how to do

22   this?  Because again, I think what they're asking us to do is

23   to contact all 2,000 of our agents and ask for their do not

24   call list.  We don't have that.  We're going to have to -- and

25   here's the thing.  There is a substantial cost to do this, and

1   it's going to -- so I just want to make sure I understand.  Is

2   this similar to interrogatory 1 where we're being ordered to

3   find a way forward that accounts for that burden in trying to

4   do this?

5          THE COURT:  So, you know, this was my frustration

6   leading into this and at the top of the last hearing.  Those

7   conversations about burden and how you can accomplish this

8   should happen before you get here.  I mean, the conversation

9   on how to best do this or what plaintiff really wants or what

10  plaintiff is really seeking, you know, shouldn't be in front

11  of the Court with the Court in court.  Those are things or

12  those are conversations that happen in meet-and-confers and

13  leading up to this.

14         MR. THEIS:  Your Honor, we've had those

15  conversations.

16         THE COURT:  My order is that the plaintiff's request

17  in RFP number 9 is granted, and if you're asking if you can

18  have leave for the parties to discuss further how to

19  accomplish that and that production doesn't -- is withheld or

20  the date for producing is not immediate, then we can consider

21  that.  But if you need more time to discuss it with plaintiff

22  before you're ready to produce it, if that's what you're

23  asking to do, I can give you all time to do that.

24         MR. THEIS:  We would appreciate that, Your Honor.

25  Again, just to again have a clean record, we have raised this

1    burden argument issue or, you know, issue with them, and they

2    have been intransigent and said:  No, you need to go to all

3    2,000 agents and get their do not call lists, period.

4            I don't -- so I hear your frustration, Your Honor,

5    and it's our frustration, too.  So, you know, we would

6    appreciate the time to talk to them about seeing how to figure

7    out what to do next, including, you know, if they're willing

8    to move at all from that request.

9            THE COURT:  Okay.  So, yes, please confer.  You have

10   leave to confer.  I'm not going to order an immediate

11   production.  The parties are ordered to confer on that issue,

12   and I hope that you can get to some agreement.  I think, you

13   know, working together on proposals would be helpful, but at

14   the same time, you know, this is the -- these are the pains of

15   discovery.  You know, unfortunately, this is what comes with

16   civil litigation, you know.  The fact that these things are in

17   the production of discovery, particularly in classwide cases,

18   again, in and of itself is not a reason for a court to say

19   that a party doesn't have to, you know, produce information or

20   do the legwork to figure out what the burden and the cost of

21   the burden would be.

22           Okay.  So that's to number 9.  Hold on one second.

23      (Brief pause.)

24           THE COURT:  Okay.  So RFP number 10, I understand

25   that's tabled, is that right?

1       MR. MAROVITCH:  This is Dan Marovitch for the

2    plaintiff.  Yes, I think this is one where, you know, we're or

3    plaintiff is willing to revisit it after we get the ESI

4    production.  The only suggestion that I have is that it would

5    be more efficient if HST were able to just tell us what

6    uplines it doesn't get IDNC information from.  I think we have

7    testimony from Adriana Rock, who's the primary person, but to

8    have confirmation about who else would have this IDNC data for

9    which HST is sure it doesn't have, that will allow us to again

10   more efficiently just approach those entities directly while

11   the parties complete kind of the first party ESI aspect of it.

12   That's just a suggestion.

13       THE COURT:  What's your response?

14       MR. THEIS:  Your Honor, you know, I think we can talk

15   about the custodians when we get there.  I think we've

16   provided a sufficient number of custodians.  Obviously, you

17   know, it's a preliminary list of custodians, and both parties

18   agree that we're going to produce a substantial amount of

19   documents out of that.  Then if we need to revisit it after

20   we've produced, you know, the set of documents that we're

21   going through to account for additional custodians, we're open

22   to those discussions.

23       MR. MAROVITCH:  I apologize, Your Honor, if I wasn't

24   clear.  I'm not saying -- my proposal wasn't about custodians.

25   It was literally just, hey, we can table this request for now,

1    you know, or while the parties do the first party discovery

2    ESI protocol, but then it would also be efficient, because

3    this request is asking for upline IDNC list information, if

4    HST already knows that it doesn't get upline IDNC data from,

5    you know, Upline XYZ, they should just tell us so that we

6    could subpoena that entity for it.  Then we're not kind of,

7    you know, just sitting around waiting for a response that

8    ultimately, as everybody knows, isn't going to have that data.

9           MR. THEIS:  I see.  Yes, I agree.  I see the

10   argument.  I was confused on that.  Okay.  Yes, if it would be

11   helpful to resolve this request, we can go back and we can

12   certainly talk to our client about, you know, what are the

13   entities for whom -- well, okay.  So, you know, I think we

14   have -- the ESI protocol is going to -- there's going to be

15   emails that are going to be produced through the ESI process,

16   the email production process, that will show there was

17   communications with third parties upline to plaintiff's base.

18          I don't know the full scope of what -- I mean, I

19   don't want to be over or underinclusive.  I think the better

20   way to do this is to go through the process of producing the

21   emails, and then we can gather that information and understand

22   it better.  Then after the review and production if there's

23   specific uplines that we are not seeing in there that we're

24   not understanding what the issue is, we can revisit this

25   question.

1          So I guess what I'm saying is similar to Your Honor's

2    order about the contract, which is a different request, that

3    let's do the ESI, the email production first, and then we can

4    revisit the core of what we're talking about here.

5          THE COURT:  Mr. Marovitch?

6          MR. MAROVITCH:  Thanks, Your Honor.  Yeah, I mean,

7    the problem is just if HST without doing the ESI protocol

8    already knows, oh, they don't get any IDNC information from

9    this upline, you know, then we already know that it's not

10   going to have the responsive information in the ESI results,

11   and we might as well just -- you know, plaintiff can go

12   subpoena them for the IDNC information.  That was just a

13   suggestion, you know, just to kind of make things a little

14   more efficient, yeah.

15         THE COURT:  Okay.  So then what the Court is going to

16   do is to narrow without prejudice RFP number 10, and then as

17   the parties discussed, to the extent the ESI production itself

18   reveals a need for further follow-up or something different,

19   then plaintiff can revisit that request.

20         Okay.  RFP number 11, again, is that in a similar

21   posture?  Is it tabled or not?

22         MR. MAROVITCH:  Your Honor, this is Dan --

23         THE COURT:  So is it --

24         MR. MAROVITCH:  I'm sorry.  Go ahead.

25         THE COURT:  No, go ahead.

1        MR. MAROVITCH:  Your Honor, this is Dan Marovitch for

2   the plaintiff.  I think this is one where, you know, request

3   11 is just asking for IDNC coordination information.  If that

4   is what HST is going to be producing from Leadmaster

5   unredacted in addition to whatever comes off the ESI, I think

6   that takes care of this one.

7        THE COURT:  Okay.  So then this is denied without

8   prejudice for the reasons stated.  So, you know, if somebody

9   is objecting to the ruling, you better say it now or else I'm

10  moving on to the next one.  Okay?

11       MR. THEIS:  Okay.

12       MR. MAROVITCH:  Okay.  Thank you, Your Honor.

13       THE COURT:  Okay.  Again, RFP number 16, just to be

14  clear, there's still a dispute between the parties, and

15  defendant's main objection is burden, correct?

16       MR. THEIS:  Well, Your Honor, what I would say is

17  they're asking for any putative class member, and we don't

18  know what the putative class is so we can't go and look at the

19  information.  We don't know where to look for this information

20  because we haven't identified what the scope of the putative

21  class is.

22       THE COURT:  Right.  Mr. Marovitch?

23       MR. MAROVITCH:  Thank you, Your Honor.  So, I mean, I

24  don't see this request as being burdensome because it's all

25  system-based.  So, you know, Ms. Rock testified that it does

1  have -- that Leadmaster, HST's Leadmaster system does have

2  scrubbing capabilities.  It seems like an easy way to go about

3  paring this request would be to just determine if it keeps a

4  log of that.  I mean, that would be responsive to this, and it

5  shouldn't be hard.  If it doesn't, you know, if that's not

6  something that is maintained, then it doesn't have anything

7  responsive to produce, and if it has it, then that would be

8  responsive to the request.

9       MR. THEIS:  Well, I guess, Your Honor, the problem

10 here is that, again, it would not necessarily be something for

11 a request.  That would be producing all activity for, again,

12 thousands of agents over an extended period of time that is

13 unrelated to either plaintiff or the class.  But we could

14 certainly take, I guess -- I mean, the difficulty that we're

15 running into with this one and a few other ones is that it

16 asks about putative class members.

17      THE COURT:  Okay.  So as I understand it, plaintiff

18 is asking for scrubbing activities concerning the plaintiff

19 or, I guess, the putative class members.  To be fair, what is

20 the definition of a putative class member, and how are you

21 saying that defendants should define that?

22      MR. MAROVITCH:  Thank you, Your Honor.  This is Dan

23 Marovitch for the plaintiff again.  So I think what we were

24 getting at with this request is just scrubbing activity

25 because, you know, the TCPA itself prohibits any, any

1    telemarketing without the proper IDNC records in place.

2           I mean, if defendant is saying it's able to produce,

3    you know, and whittle down the data to, you know, the class

4    definition language in our complaint and produce that, I mean,

5    that's fine, but I think more generally really the gist of

6    this request is just, you know, were they scrubbing or not

7    and, if so, to produce it.

8           THE COURT:  So --

9           MR. MAROVITCH:  You know, if they're making a burden

10   argument, you know --

11          THE COURT:  -- are you just asking them to produce

12   any and all scrubbing activity at the company in a certain

13   time period?

14          MR. MAROVITCH:  I think that was the intent behind

15   this request.  I realize, you know, it does reference putative

16   class members.  If defendant is saying that it can whittle it

17   down to putative class members, then we're not looking to

18   modify the request.  But it seems like, you know, the gist of

19   what we're trying to get at is were you scrubbing or not.

20          THE COURT:  Well, I guess what I'm saying is you

21   might need to modify this request because I don't think -- I

22   mean, no one has answered my question.  I don't know if you're

23   -- are you able to -- are you saying you want every

24   single one, like to identify all the putative class members,

25   and then have HST provide you any information regarding

44

1    scrubbing of that particular individual?

2          MR. MAROVITCH:  Thank you, Your Honor.  No, really

3    what we were getting at is just any scrubbing activity.

4          THE COURT:  Okay.  So here what --

5          MR. MAROVITCH:  Yeah.

6          THE COURT:  So this is -- I think we need to grant

7    this in part.  So it sounds like plaintiff is excising the any

8    putative class member part or qualifier of this request and

9    just asking for all scrubbing activities within whatever the

10   defined time period is in the definitions of those, you know,

11   the requests for production.

12          Given that information, Mr. Theis, would you respond

13   to this, or have you already responded to it?

14          MR. THEIS:  I can respond.  So it looks like we're

15   expanding this then to anytime any agent scrubbed or any

16   scrubbing activity internally at HST regardless of whether it

17   relates to plaintiff or a class member, and I think that he's

18   asking for a full seven-year period.  You know, I --

19          THE COURT:  Oh, okay.  That's it.

20          MR. THEIS:  That's what I think he's -- I'm not going

21   to say -- this is not a narrowing of this request, but a

22   wildly expanding version of this request now, and I think this

23   is really getting probably farther away from this case.

24          THE COURT:  Okay.  Again, I don't really know the

25   (inaudible) you go through, which is why, again, I don't

1    understand how you haven't had these conversations before.

2          MR. THEIS:  Your Honor, we have.  We have had these

3    conversations, and this is where we landed.  They are not in

4    favor of narrowing this request, and we've tried.  We've

5    really worked hard to try to narrow it, and they're sticking

6    with:  No, we want every single scrubbing activity, and we

7    want you to define the class member to do that.

8          That's where we've landed on this.  That's why this

9    is here.

10         MR. MAROVITCH:  Your Honor, this is Dan Marovitch for

11   the plaintiff again.  I don't -- our approach to this and a

12   lot of the other requests is a little more pragmatic.  It

13   seems, I mean, they're raised this issue of like, well, it's

14   hard for us to identify who was in the class.  I think our

15   intent generally was like just is there scrubbing of data, but

16   given that they're also raising this burden about identifying

17   the class and then producing, you know, then producing the

18   respective scrubbing activity for that when I think a

19   threshold issue or a threshold question the parties should be

20   figuring out is:  Is this stuff even logged at all?  Like if

21   it's not logged at all, then there's nothing to produce and,

22   you know, the issue is -- there's no issue.

23         It's more and more like the parties should just have

24   that kind of basic information of what is -- if it is being

25   logged, is it something that is producible and how difficult

 1   would that be?  That's really where we're kind of -- I guess

 2   defense counsel is right.  That's kind of where we have

 3   landed.  That's just how we brought this forward.

 4            THE COURT:  So it seems to me once you have done the

 5   work for interrogatory number 1 that you would have the answer

 6   at least to who's a putative class member.  Is that a correct

 7   assumption or a logical conclusion?

 8            MR. MAROVITCH:  Your Honor, Dan Marovitch again for

 9   the plaintiff.  Yeah, plaintiff agrees with that.

10            THE COURT:  Okay, which you don't have right now,

11   which you don't have right now because you're still obviously

12   working on getting that information.  So it seems that the

13   parties don't have yet what they need to answer the question.

14   That doesn't mean that the Court will deny this request.

15            So what I'm going to do is deny it without prejudice

16   and, you know, plaintiff is free to issue, you know, whatever

17   additional discovery they need to get to the question they

18   just asked because it seems there's still no answer to that

19   question about whether or not there are no, full stop, right,

20   scrubbing activities or whatever that question is that you

21   just posed to which you don't have an answer.  Maybe you can

22   issue like a discovery request so that you can get that

23   answer, and then you meet and confer once you have more

24   information and ask more targeted questions.  So that's denied

25   without prejudice.

1          So then RFP number 19 is withdrawn, is that correct?

2          MR. MAROVITCH:  19 is -- you know, this is Dan

3 Marovitch again for the plaintiff.  19 is one of those where

4 it's kind of contingent on the parties sorting out the ESI

5 protocol issue.  So I think Your Honor may want to handle --

6 it's akin to the ones Your Honor has already kind of handled

7 that same way.

8          THE COURT:  Okay.  So that's denied without prejudice

9 on RFP 19.  Then 24, the same thing, it's denied without

10 prejudice to the parties as it relates to a forthcoming

11 agreement on production of materials pursuant to ESI protocol.

12 Then 32 is again denied without prejudice for the same reason.

13 All right.

14          So then RFP number 6 -- or no, interrogatory number

15 6.  Did we do RFP 6?  Yes.  So interrogatory number 6, I think

16 this is another one that can be tabled pursuant to the parties

17 discussing the search terms and custodians.  Is that -- that's

18 how I'm reading interrogatory number 6.

19          MR. MAROVITCH:  Your Honor, this is Dan Marovitch.

20 I'm sorry.  This is Dan Marovitch for the plaintiff.  I think

21 that's right.  This is one that can be tabled.  I don't know.

22 Maybe it makes sense to discuss it now.  So there's an issue

23 with the identification of HST's uplines where plaintiff

24 thinks that we need to at least have that in some capacity.

25 We had kind of anticipated that being sorted out through the

1    ESI protocol, but based on the information or at least the

2    discussion that counsel and I had this morning, it seems like

3    that may not work out as I had anticipated.

4            I think it's just -- plaintiffs, I think we need to

5    have some indication of who the uplines are and their general

6    relationship with the defendant, and as long as that can be

7    sorted out through the ESI protocol I don't have a problem

8    with that.  But there shouldn't have been pushback on that.

9    Maybe it makes sense to deal with this when we deal with the

10   ESI protocol.  I apologize.  I'm just think I'm getting ahead

11   of this, you know.

12           THE COURT:  Yes.  I mean, so it sounds like I'm going

13   to deny this without prejudice.  Then based on what counsel

14   just represented, you can discuss it and you'll determine --

15   well, we'll address the ESI protocol and then the production,

16   and if it is sufficient or not, then you can submit whatever

17   additional requests that you might have.

18           Okay.  Turning to interrogatory number 10, this is

19   not -- okay.  So the defendant claims that it would be unduly

20   burdensome to again determine this information from the

21   agents.  What is the specific articulation of where we are

22   here?

23           MR. THEIS:  So we've identified the ones that we know

24   of.  TopBroker is one of them.  There's one that Mr. Martelo,

25   as we found out through discovery, used.  So we're willing to

1    identify that as well.  We think that response is sufficient,

2    and it's based on our knowledge and our discussions with our

3    client and in understanding where we are.  But their point is,

4    you know, you need to go to every single agent and ask them

5    what the system database is that they use, all of these

6    independent contractors.

7            Again, you know, we've provided the ones that HST is

8    aware of, that the company is aware of.  It's the same issue

9    that we had before of asking -- you know, we don't see what

10   the -- you know, the burden of doing that for all 2,000 agents

11   doesn't seem to -- you know, it seems to be disproportionate

12   to the case.

13           MR. MAROVITCH:  Your Honor, if I'm able to, this is

14   Dan Marovitch for the plaintiff.  This is the request that I

15   referenced earlier where, you know, it's relevant to know

16   where the agents, you know, where HST's downlines are storing

17   their data, you know, their call center data, their CRM data,

18   however you want to call it, because those entities, you know,

19   a lot of these are hosted, and those entities will have that

20   relevant information.  So it might provide a source to

21   subpoena for those class records and, you know, and they'll

22   have information about the agents with the telemarketing issue

23   and what it entailed.

24           So I think this request itself is directly relevant,

25   but it's also relevant in a way that might lead to, you know,

1    more efficient class discovery.

2            THE COURT:  Okay.  So that's what I was

3    contemplating.  This is the same type of issue that we were

4    discussing for interrogatory 1, which is a way to get

5    databases that house what we talked about before, the call log

6    information.  You know, for the reasons I stated before, I

7    said I thought it was -- that this information is

8    proportionate, it's relevant, and the burden to obtain it is

9    not outweighed by proportionality to the case and the needs of

10   the case.  I guess I don't see how this is substantially

11   different than what we've already ordered the parties to do

12   for interrogatory number 1.

13           MR. THEIS:  This is --

14           THE COURT:  I'm not sure that somebody pointed it

15   out, but I don't see it.

16           MR. THEIS:  This is Jack Theis for the defendant,

17   Your Honor.  So interrogatory 1, as I understand what the

18   Court's order is, it's that we are ordered to figure out and

19   to negotiate about how to get this information to plaintiff.

20   You know, if Your Honor is saying that we need to do the same

21   thing here, we can.  You know, I just want to -- you know,

22   we've set forth our burden objection about emailing all 2,000

23   and asking for and then compiling the data in order to

24   identify every database that they use.  It's going to be, you

25   know, a significantly costly exercise.

1          But if there's a way for us to work with plaintiff's

2     counsel to see, you know, if there's a sampling method or some

3     targeted way to find this in another way, we can do that.

4     It's just we haven't had that kind of -- we haven't had that

5     kind of discussion with them, you know, before to see if

6     they'd be willing to sort of narrow this in some way.

7          THE COURT:  All right.  So, I mean, for all the

8     reasons I stated before with respect to interrogatory number

9     1, interrogatory number 10 is granted.  Their request is

10    granted, and the parties do have leave to discuss and work out

11    the most efficient way for the parties to -- for plaintiff to

12    get the information.  But plaintiff is entitled to the

13    information, and the request is granted.

14         Interrogatory number 11, that interrogatory again is

15    one that the parties have agreed to revisit after production

16    of documents responsive to the ESI protocol, so I'm going to

17    deny that without prejudice.

18         RFP numbers 6 and 7, my notes here say that the

19    parties have agreed to table this issue until after defendant

20    produces the class data responsive to interrogatory 1.  Okay.

21    So this is denied without prejudice, not for the reasons for

22    the ESI, but once the parties have -- once there's a sort of

23    efficient production for interrogatory 1, and that's as to RFP

24    numbers 6 and 7, as I have it.

25         RFP numbers 14 and 15, I'm putting them both

 1   together.  Oh, okay.  So, no, 15, I've also issued a ruling on

 2   15.  RFP number 14, so defendant has produced the contract

 3   Mr. Martelo signed, so it's if this contract is identical to

 4   all contracts it joined with its agents.

 5          So, defendant, did you confirm that this contract is

 6   identical for all agents for the two years prior to the class

 7   period?  Did you do that already or not?

 8          MR. THEIS:  We have not even -- I'm sorry.  I'm

 9   sorry, Your Honor.  Go ahead.

10          THE COURT:  I'm finished, so go ahead.

11          MR. THEIS:  Sure.  Judge, as to defendant, we have

12   not, Your Honor.  That was our offer to try to resolve this.

13          THE COURT:  Oh, okay.

14          MR. THEIS:  I'm not sure -- just looking at the

15   plaintiff's position on this, I'm not sure if that's -- if

16   they were accepting that.

17          THE COURT:  Okay.  So, yes, plaintiff, what's your

18   position on the offer to confirm if the contract is identical

19   for all the agents?  Go ahead.

20          MR. MAROVITCH:  Yes.  Thank you, Your Honor.  Dan

21   Marovitch for the plaintiff.  Yeah, I think it makes sense in

22   part.  I believe we may have already produced some, like

23   another template contract, but if they produce the other

24   remaining, you know, for the time, you know, for the

25   appropriate time period that we've been discussing, those

 1   contracts, I think that's fine.  You know, we don't need to

 2   see 2,000 of the same contract.

 3          But by the same token, we have, you know, we have

 4   this need to know who the downlines are.  So our proposal had

 5   been to just identify the downlines.  If there are other

 6   contracts that aren't standardized, you know, like I'm

 7   thinking, you know, there may be some lead generators that HST

 8   contracts with directly who are not, you know, quote-unquote,

 9   agents but they do kind of like inbound lead transfers, I

10   don't know that that would be a standard contract.

11          So as long as we -- you know, we're not looking for

12   them to duplicate work if it really is duplicative, but to the

13   extent there's, you know, other contracts that aren't form

14   contracts and just simply identifying the downlines, that's

15   really what we're -- I think that would satisfy it for us.

16          THE COURT:  Okay.  So you're saying that a compromise

17   to producing contract agreements with each downline is to

18   produce all the different types of form contracts for all the

19   different types of contracts, form contracts for the relevant

20   time period, and producing or identifying the names of the

21   individuals who are these third parties who generate leads for

22   downline, is that correct?

23          MR. MAROVITCH:  I think that's correct, Your Honor.

24   So, in other words, there are -- the way I understand it is

25   the agents have just kind of like a standard contract that HST

1   uses.  So it's just like, you know, produce that standard

2   contract, just a copy of it so that we don't have to duplicate

3   it all 2,000 times.  Then to the extent there are other

4   downlines that, you know, engage in telemarketing, you know,

5   that would be responsive to the request, just produce that

6   contract to the extent it's not like also one of the form

7   contracts that's already been produced, and then identify the

8   downlines.  So I think we would want maybe more than just the

9   name but also, you know, their contract information, whatever

10  they have.

11              MR. THEIS:  Your Honor --

12              THE COURT:  Like another RFP or rog?

13              MR. MAROVITCH:  Yes, yes.

14              THE COURT:  Is there -- that information is not the

15  subject of another rog --

16              MR. MAROVITCH:  I --

17              THE COURT:  -- or another request altogether?

18              MR. MAROVITCH:  Off the top of my head -- and this is

19  Dan Marovitch again for the plaintiff -- off the top of my

20  head, I don't know that we have.  I think there probably is

21  another interrogatory addressing, you know, who are the

22  downlines.  I don't know if it's part of this chart, though it

23  may have been, you know, not something that we had included,

24  anticipating that it would just be part of the contracts that

25  were produced.

1           THE COURT:  All right.  So, I mean, this is the type

2      of conversation the parties can work out separately.  I mean,

3      the RFPs, I guess that you may have agreement.  This is the

4      part where you guys get to your own agreements, and then the

5      issue is no longer a dispute.  So I'm going to -- you know,

6      plaintiff has agreed to produce -- well, has plaintiff agreed

7      or not agreed to produce form contracts with the third

8      parties, the form contracts that they have for the time

9      period?

10          MR. THEIS:  Judge, this is the defendant.  We have

11     agreed to produce the form contracts for the agents for the

12     time period that they've requested.

13          THE COURT:  Okay.  So the Court is going to deny --

14     sorry -- grant this request, grant this request, number 14,

15     with the limitation that was just stated by defendant.  To the

16     extent that there is more information that's sought, the

17     parties are going to have to work that out on their own or

18     issue another, you know, discovery request that is specific in

19     nature and you'll have to work it out essentially.

20          MR. MAROVITCH:  Thank you, Your Honor.  This is Dan

21     Marovitch for the plaintiff.  Just to clarify, is it -- is HST

22     limiting its production just to agent contracts, or does it

23     also anticipate producing other downlines, other contracts for

24     downlines that engage in telemarketing?  Because it's my

25     understanding there is a small number of lead generators that

1  were kind of sending telemarketing leads that would be

2  responsive as well.  Was that -- so just to clarify that that

3  was anticipated.

4          THE COURT:  Mr. Theis?

5          MR. THEIS:  So I disagree.  It was the form contract

6  for the agents.  As I sit here today, I don't know if there

7  are form contracts for these other third parties that he's

8  talking about.  We can get that information, or we can work

9  with them on if it is a standard form contract and, you know,

10  we can look into whether we can produce that.

11          THE COURT:  Okay.  All right.  RFP 15, I've already

12  denied it without prejudice.  That was at the last hearing.

13          RFP number 26, was this specifically tabled?  This is

14  another one where the parties are waiting to determine what's

15  going to happen with the ESI protocol and reraise it, if

16  necessary?

17          MR. MAROVITCH:  Your Honor, this is Dan Marovitch for

18  the plaintiff.  Yeah, I think we've reached an understanding

19  on this one, that's correct.  I think we're going to try to

20  figure out if there's anything even responsive and then try to

21  work it out ourselves, if it can be.

22          THE COURT:  Okay.  So that's denied without

23  prejudice.

24          27 is still here.  Again, is this another one that's

25  tabled pending the responsive documents that will be produced

1   from the ESI protocol?  Yeah, 27, you withdraw if, yes, HST

2   produces responsive materials that would not hit on -- there's

3   a qualifier here that says plaintiff would withdraw RFP 27 if

4   defendant produces responsive materials that would not hit on

5   an ESI custodian search.  What's the status of this one?

6          MR. MAROVITCH:  Yes.  This is Dan Marovitch for

7   plaintiff.  Sorry.  I apologize if it's not as clear as it

8   should be, but I think the issue is there are some -- I think

9   it's anticipated in the ESI protocol that some or that there

10  may be some responsive information or documents that don't hit

11  on the custodian's keyword search.  I'm thinking of things

12  like, you know, kind of just like a business record, you know,

13  keeping track of return on investments for, you know, these

14  reimbursements.

15         I just think the caveat to that was just we expect

16  this to be sorted out through the ESI protocol, but there may

17  be additional, you know, additional responsive materials that

18  don't hit on a custodian keyword search at the rate we'd

19  expect the parties to keep kind of sorting out.  So I think

20  this is another one where we can just kind of see what happens

21  with the ESI protocol and that the parties continue

22  discussions and then revisit it, if necessary.

23         THE COURT:  Okay.  It's denied without prejudice for

24  the reasons that were stated previously.

25         Then 28, I have a note that it has been denied

```
 1   without prejudice pending -- not pending, but denied without
 2   prejudice given that the parties are going to formulate ESI
 3   protocol and produce responsive information to that, too.
 4           Then with RFP 20 and 21, they're merged together.  So
 5   I have a question for defendant on why defendant believes that
 6   an email search would be sufficient, an ESI search would be
 7   sufficient to provide plaintiff with all of the responsive
 8   information --
 9           MR. THEIS:  I think it --
10           THE COURT:  -- to the interrogatory.
11           MR. THEIS:  Sorry, Judge.
12           THE COURT:  No, go ahead.
13           MR. THEIS:  Okay.  Judge, as to defendant, you know,
14   I think this is kind of poorly worded.  So the point is that
15   we have produced several, many documents, you know, throughout
16   our production that we believe support our defense.  There may
17   be emails that are included in the ESI production that also
18   support our defense.  I just don't want to, you know, say
19   that, you know, we are cutting off today any documents that
20   support our affirmative defenses.
21           If there's additional emails, for example, that
22   relate to the plaintiffs or that relate to other issues or
23   anything else that would also be used in support of our
24   affirmative defense, we're going to search for and produce
25   those communications.
```

1       THE COURT:  Okay.  So, you know, I'll just say that

2  this is denied without prejudice and also note that the

3  plaintiff is required to produce all information supporting,

4  relating to, or refuting any affirmative defense in this

5  action and relating to any consent or permission to call

6  plaintiff or any person or entity (inaudible).  Okay.

7       MR. MAROVITCH:  Your Honor, this is Dan Marovitch for

8  the plaintiff.  So if I understand what you're saying, I think

9  the sticking point for these two requests for plaintiff is

10  just that it's not -- it's relating to the kind of structure

11  that wouldn't hit on like an ESI protocol search at all.  So

12  if I am understanding this, these are going to be denied

13  without prejudice but subject to anticipating that we get that

14  data in response to Your Honor's order as to interrogatory 1,

15  for example, was it?

16       THE COURT:  No.  What I said, you know, is it's

17  denied without prejudice, but I'm also ordering plaintiff to

18  provide all documents -- sorry -- defendant to provide all

19  documents supporting, relating to, or refuting their

20  affirmative defenses.  I think that is required.  A defendant

21  has a duty to produce evidence supporting the affirmative

22  defense of consent.  So I'm just ordering the parties --

23       Well, what you're asking is to compel them to provide

24  the information because -- if there was some sort of

25  deficiency regarding it they identified, and there hasn't

1  been.  So I'm not -- I'm denying it without prejudice at this

2  moment.

3          Again, the reason for that is, you know, there are --

4  as we discussed at the beginning in the previous hearing,

5  there are sanctions that could be awarded or not awarded based

6  on the Court's rulings on these particular motions.  I hadn't

7  seen anything here that says that defendant has not abided by

8  or produced the relevant material, so I'm denying this without

9  prejudice but reminding defendant that it has an obligation to

10  produce, you know, all evidence supporting its affirmative

11  defenses.  If after your ESI production it is revealed that

12  there is a deficiency, then, Mr. Marovich, you can raise that.

13          MR. MAROVITCH:  Thank you, Your Honor.

14          THE COURT:  Okay.  All right.  Then we have -- did we

15  do 25?  No.  25 again is denied without prejudice because, you

16  know, the parties did that.  That's not related to the ESI,

17  correct?

18          MR. MAROVITCH:  Your Honor, this is Dan Marovitch for

19  the plaintiff.  My understanding is that HST is going to be

20  producing some materials.  We're willing to look at that and

21  then reassess later.  So it's similar to the ESI issue --

22          THE COURT:  Okay.

23          MR. MAROVITCH:  -- or those issues.

24          THE COURT:  So it's denied without prejudice, and if

25  there's issues then you can raise those.  Okay.  I think that

1    covers the chart, correct?  I want to keep moving unless

2    counsel thinks we didn't finished with the chart.  Did we

3    finish it?

4            MR. MAROVITCH:  Dan Marovitch for the plaintiff.

5    Yeah, that's my understanding.

6            THE COURT:  Okay.  All right.  Mr. Theis?

7            MR. THEIS:  Yes, Your Honor, that's correct.

8            THE COURT:  Okay.  So as to the ESI protocol, my

9    question is what is the -- where the parties are.  I see what

10   the disputes are.  You know, I'm looking at the red-line.  How

11   can the Court be most helpful to the parties on this with

12   where you are now?

13           MR. MAROVITCH:  Your Honor, this is Dan Marovitch.

14           THE COURT:  I'll hear from the plaintiff first and

15   then Mr. Theis.

16           MR. MAROVITCH:  Thank you, Your Honor.  This is Dan

17   Marovitch for the plaintiff.  You know, from plaintiff's

18   perspective, I think a lot of this can still be sorted out by

19   the parties.  We're -- part of the sticking point on it, you

20   know, there's I think three big areas that the parties are in

21   dispute about, the custodians, the search terms, and then this

22   TAR issue, and they kind of all feed into each other.

23           From plaintiff's perspective, we don't really have a

24   good sense that this current protocol is appropriately geared

25   towards obtaining responsive information, and I'm saying that

1    because we haven't really gotten down to the nitty-gritty with

2    defendant about who these -- you know, we understand there

3    were four primary custodians.  They've added some, you know,

4    people who report to those primary custodians as additional

5    custodians.  But a bigger issue for plaintiff is that there's

6    this need to mitigate the fact that a year's worth or several

7    years' worth of ESI for the main people at HST who have

8    relevant information has been lost.

9         So from plaintiff's perspective, what we would really

10   like to have from HST is more transparency about the

11   additional people that might have ESI that could make up for

12   that data or that ESI loss and then a more substantive

13   discussion about these.  We know that at least four of these

14   people are definitely relevant, but we have these people that

15   report to them maybe discussing further about who's really

16   relevant and should be included as a custodian or not.

17        So that's kind of an issue from plaintiff's

18   perspective.  It's hard for us to agree to this when there's

19   so much unknown, and it seems like, you know, what we really

20   care about isn't really being addressed.  In that, you know,

21   the bulk of the most relevant ESI in the case has been lost,

22   we need to make sure that we're doing our best to make up for

23   that.

24        Then relatedly, you know, it would be helpful to have

25   a hit report and then work out -- you know, defendants raised

1    some burden issue about the scale of the anticipated

2    production based on the current search terms and using that

3    as, you know, its basis for the need for TAR.

4         But I think that the parties would benefit from

5    similarly kind of getting down to the nitty-gritty about what

6    the hit report says.  If there are certain keywords that are

7    hitting, you know, maybe they can be modified in a way that

8    reduces that or gets us down to what really matters in the

9    case and obviates, you know, the need that HST says it has for

10   TAR.

11        So those are the main issues we have.  I mean, there

12   are things like -- you know, there's nothing in the current

13   search term list that would account for the uplines, and I get

14   one of the first things today was, like, HST doesn't think

15   it's feasible based on the number of uplines.  But even that's

16   something that the parties should at least talk about and try

17   to sort out to see if, well, maybe we can include, you know, a

18   name and then a qualifier.  You know, we just haven't gotten

19   down to that level of, you know, trying to work it out that I

20   think the parties really need, so that's really kind of where

21   things land from plaintiff's perspective.

22        THE COURT:  Okay.  Mr. Theis, I'll allow you to weigh

23   in here, but I do -- as with what we've been discussing for

24   the last or since we started this morning, you know, it's

25   become abundantly clear and it is clear from the last time you

1   all were in front of me, too, that you need to spend a little

2   more time, you know, working this out.

3          I think, for example, like the uplines conversation,

4   there definitely needs to be some search terms in there which

5   qualify the uplines, because in the previous, you know,

6   discovery we were just talking about, Mr. Theis, you were

7   indicating that ESI production would resolve some of the, you

8   know, the RFPs that we just denied without prejudice that are

9   based on upline information, and yet there's no search terms

10  to capture them.  So, you know, those types of things would

11  need to be included.

12          You know, as to your hit count, you know, I know that

13  it's what, 128,000?  You know, it may be shocking to you, but

14  I'm going to say that that's not a lot, particularly where

15  there's no context for it.  Are those documents?  Are those

16  hits within the documents?  Did you dedupe before you provided

17  that number?  I mean, I think it's completely out of context

18  unless you've had those conversations, and it sounds like

19  you're saying that you haven't had those conversations yet,

20  either.

21          So, you know, Mr. Theis, you can respond briefly, but

22  my order is going to be that the parties continue to meet and

23  confer, and then I'm going to give you a date certain to

24  report back on where things stand so that I can be a bit more

25  helpful and perhaps the parties can identify specific areas in

1    which they're seeking the Court's ruling on.

2            So go ahead, Mr. Theis.

3            MR. THEIS:  I think, you know, I'll be very, very

4    brief given what Your Honor is saying.  I think I understand

5    where you're going on this.  So I agree with what Mr. Marovich

6    started with, which is that I think there is room for us to

7    continue to talk about this.  You know, we have had some

8    discussions about this.

9            You know, part of the issue is, of course, that we

10   haven't agreed on custodian lists.  The list that's here, I'm

11   able to say this is nine individuals of a 30-person company.

12   I think we're at kind of like a third, almost a third of the

13   company.  I think we're getting close on the custodian list

14   and the numbers that we can do on that, and I think we've been

15   transparent about what these people -- who they are.  But

16   we'll continue to work with them on that piece.

17           You know, I think the only search term issue is

18   whether we have to name the individual uplines and the lead

19   sources, but we'll work with them on that.  I think the search

20   terms that are included in here are enough to pull in the

21   emails of third parties that would be relevant to this case.

22   I mean, there's already, you know, a substantial number of

23   search terms that would get those communications with those

24   third parties, and they relate to TCPA, IDNC, DNC plaintiffs.

25   That's all getting captured in these search terms.

1       So, you know, with all of that, that's my response,

2    Your Honor, but I agree that it makes sense to set a date

3    certain for us to come back when we have final positions on

4    this.

5       THE COURT:  Okay.  Great.  So we will do that.  We'll

6    include that in the order, and then we'll go from there.  So

7    we'll be issuing an order today or tomorrow that has all the

8    information that we've discussed today and the rulings and

9    then what the next steps are.  Okay?

10      MR. MAROVITCH:  Thank you, Your Honor.

11      MR. THEIS:  Thank you, Your Honor.

12      THE COURT:  All right.  Thanks to you both.

13    (Proceedings concluded.)

14              C E R T I F I C A T E

15      I, Patrick J. Mullen, do hereby certify the foregoing

16    is an accurate transcript produced from an audio recording of

17    the proceedings had in the above-entitled case before the

18    Honorable JEANNICE W. APPENTENG, one of the magistrate judges

19    of said court, at Chicago, Illinois, on June 13, 2024.

20

21                              */s/ Patrick J. Mullen*
                             Official Court Reporter
22                             United States District Court
                             Northern District of Illinois
23                             Eastern Division

24

25