UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADAM AILION, individually and on behalf of a class of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HEALTHCARE SOLUTIONS TEAM, LLC,<br><br>Defendant. | Civil Action No. 1:21-cv-06231<br><br>Hon. LaShonda A. Hunt<br><br>Hon. Jeannice W. Appenteng |

**DEFENDANT'S MOTION TO CLARIFY OR FOR RECONSIDERATION**

Defendant Healthcare Solutions Team, LLC ("HST") respectfully requests the Court to clarify or reconsider a single, limited aspect of its June 17, 2024 discovery ruling: the Court's order that HST produce documents in the possession of third parties over whom it has no control.

**BACKGROUND**

***Plaintiff's allegations.*** On November 19, 2021, Plaintiff Adam Ailion filed suit against HST and National General Holdings Corp. ("NatGen"), seeking relief under the Telephone Consumer Protection Act ("TCPA") and the Florida-state equivalent, the Florida Telephone Solicitation Act ("FTSA"). *See* Complaint, ECF 1. This Court ultimately dismissed NatGen from the case, and the only claim that remains is that under the TCPA against HST. *See* March 2, 2023 Memorandum Opinion and Order, ECF 56; Minute Entry (March 8, 2023), ECF 58.

Mr. Ailion is a resident of Georgia, and HST is an Illinois limited liability company. *See* Revised Amended Complaint ("RAC") ¶¶ 8, 11 (Feb. 15, 2022), ECF 31.

Mr. Ailion alleges that, in December 2020, he requested that HST place his telephone number on its Do Not Call list. *Id*. ¶¶ 22–23. He claims on August 23, 2021, he received a call and a text message from an individual named Jim Martelo. *Id*. ¶ 34. Mr. Ailion alleges that HST—along with NatGen—authorized the call. *Id*. ¶¶ 36, 40.

Mr. Ailion brings this action under the TCPA on behalf of himself and a putative class. He asserts a class under Rule 23(b)(3) on behalf of the following individuals:

> TCPA Class: All residential telephone subscribers in the United States (i) to whom a call was made for the purpose of encouraging the purchase of NatGen and/or HST goods or services or to find a marketing "lead" for their goods or services, (ii) to such residential telephone line, (iii) where the consumer had previously asked NatGen, HST, or any of their lead generators or telemarketing vendors not to call them, and (iv) where there was more than one such call within a 12-month period, at least one of which was made on or after the date four years prior to filing of this action.

*Id*. ¶ 56. Mr. Ailion also asserts a Rule 23(b)(2) class on behalf of "[a]ll residential telephone subscribers in the United States who have requested that NatGen, HST, or any vendor thereof stop calling them." *Id*.

***Plaintiff's discovery from HST and from Non-Party Jim Martelo.*** Mr. Ailion propounded twelve Interrogatories and thirty-three Requests for Production on HST. As relevant to the present objections, Mr. Ailion sought the following categories of information and documents from HST:

- Interrogatory 1: "Call detail and disposition information for the following: All residential telephone subscribers in the United States (i) to whom a call was made for the purpose of encouraging the purchase of goods or services from or through HST, or to find a marketing "lead" for such, (ii) to such residential telephone line, (iii) where the consumer had previously asked NatGen, HST, or any of their lead generators or telemarketing vendors not

– 2 –

    to call them, and (iv) where there was more than one such call within a 12-month period, at least one of which was made on or after the date four years prior to filing of this action."

- <u>Interrogatory 10</u>: "Identify any system or database of any kind you or your insurance agents (or both) use to keep track of prospective business."

- <u>RFP 4</u>: "Produce all call-related data for each call responsive to Interrogatory No. 1, including but not limited to outbound call data, inbound call transfer data, and disposition data."

- <u>RFP 5</u>: Produce all lead data for each call responsive to Interrogatory No. 1.

- <u>RFP 9</u>: Produce the internal do-not-call list and associated data of each third party that generates business for you through telemarketing (e.g., Jim Martelo).

- <u>RFP 14</u>: Produce your contracts and agreements with each third party that generates leads or business for you through telemarketing, whether directly or indirectly (e.g., Jim Martelo).

HST responded to these requests. Counsel for the parties then met and conferred regarding HST's responses, and HST subsequently supplemented its responses. HST ultimately produced (or has agreed to produce) information and documents in its possession, custody, and control. HST maintained, however, that it was not (and should not be) required to produce requested information in the possession, custody, and control of the over 2,000 individuals and/or agencies who, like James Martelo, are independent contractors and own and/or operate third-party insurance agencies that market insurance products on behalf of HST and its insurance carrier clients pursuant to contracts with HST (the "Independent Contractors/Third-Party Agencies").

James Martelo is the non-party insurance agent who Mr. Ailion alleges initiated TCPA violative calls and texts to him. Martelo is an independent contractor who operates his own agency, JRM Advisory Services. Mr. Ailion sought information from Martelo through a third-party subpoena. *See* Martelo Subpoena, *attached as* Exhibit 1. In his subpoena to Martelo, Mr. Ailion sought several of the same categories of information sought in his discovery requests to HST that are at issue here—including the internal DNC list, call data, and lead data. *Id*. Mr. Martelo later responded to the subpoena.

***Mr. Ailion's Motion to Compel.*** Mr. Ailion moved to compel further responses to forty distinct discovery requests, including the six requests identified above. *See* Plaintiff's Motion to Compel (Dec. 15, 2023), ECF 81 (Sealed), 82 (Public); *see also* HST's Response to Plaintiff's Motion to Compel (Jan. 26, 2024), ECF 101; Plaintiff's Reply in Support of Motion to Compel (Feb. 9, 2024), ECF 105. For each of the six requests, Mr. Ailion sought data and documents not only from HST, but data that would be exclusively in the possession, custody, and control of HST's more than 2,000 Independent Contractors/Third-Party Agencies over which HST has no control. *See* Defendant's Responses to Plaintiff's Request for Production (June 1, 2023), ECF 82-2.

This Court set Plaintiff's Motion to Compel ("the Motion") for hearing on April 11, 2024. Minute Entry (Mar. 29, 2024), ECF 117. The Court ordered the parties to confer and present a joint status report outlining the remaining disputes addressed by the Motion in the form of a chart. Minute Entry (Apr. 5, 2024), ECF 124. The

– 4 –

parties submitted a joint status report and chart outlining the parties' remaining disputes as requested by the Court on May 2, 2024. Joint Status Report (May 2, 2024), ECF 133. The parties also submitted a supplemented joint status report and chart the next day. Supplemental Joint Status Report (May 3, 2024), ECF 134.

The parties appeared before the Court on May 7, 2024. The Court encouraged the parties' continued conferral and, following those efforts, heard the parties with regard to Plaintiff's Motion. *See* Minute Entry (May 7, 2024), ECF 135. A later hearing was to be set regarding the status of the parties' further conferral and to enter an updated discovery schedule. *Id*; *see also* Minute Entry (May 8, 2024), ECF 136 (setting telephone hearing and deadline for joint status report); Minute Entry (May. 14, 2024), ECF 139 (resetting same). On June 12, 2024, the parties submitted another joint status report and chart outlining the parties' still outstanding discovery disputes. Joint Status Report (June 12, 2024), ECF 142.

After a hearing on June 13, 2024, the Court made several rulings with regard to Plaintiff's Motion to Compel. *See* Minute Entry (June 17, 2024), ECF 143. For purposes of this Motion, HST seeks clarification or reconsideration of the Court's order granting Plaintiff's Motion to Compel responses to Interrogatory Nos. 1 and 10 and Requests for Production Nos. 4, 5, 9, 14.[1] *Id*. HST has produced (or will produce)

---

[1] Elsewhere in the Order, the Court ordered that: (1) Plaintiff's request for HST to remove non-privilege redactions was granted; (2) Plaintiff's request to compel HST with regard to Interrogatory No. 6 and Requests for Production Nos. 6–8, 10–13, 16, 19–21, 24–28, 32 was denied without prejudice; (3) Plaintiff was granted leave to discover names of HST's agents; (4) HST was ordered, "[t]o the extent there are any third parties that generate leads" for HST, "to contact those third parties and to

responsive materials in its possession, custody, and control in response to these requests. The Order, and Court's discussion of its ruling at the hearing, suggests that HST must produce responsive materials in the possession, custody, and control of the Independent Contractors/Third-Party Agencies (who are not parties to this case).[2]

For the reasons set forth below, HST requests that the Court clarify its order or reconsider it to the extent it requires HST to produce documents in the exclusive possession, custody, or control of over 2,000 Independent Contractors/Third-Party Agencies or other third parties over whom HST has no control.

***HST's Proposal on Obtaining the Information from the Independent Contractors.*** The Court ordered that the parties "meet and confer regarding the most appropriate method for targeting responsive material" for these requests. In meet and confer conferences with opposing counsel following the hearing, HST's counsel proposed that Mr. Ailion seek the information from the Independent Contractors in the same manner that it sought similar information from Mr. Martelo:

---

obtain any form contracts those third parties may use with [HST]'s agents"; and (5) the parties negotiate a mutually agreeable ESI protocol and search terms. ECF 143.

[2] The Court's ruling with respect to Request for Production No. 14 seems to even suggest that HST is required to contact certain other third parties to collect documents not in HST's possession—any contracts between *those third parties and HST's Independent Contractors/Third-Party Agencies*—even though HST is not a party to those contracts and has no right to or control over any such contracts. *See* Minute Entry (June 17, 2024), ECF 143 ("To the extent there are any third parties that generate leads for defendant, defendant is to contact those third parties and to obtain any form contracts those third parties may use with defendants' agents.") Indeed, this part of the order is beyond what is even sought by Mr. Ailion in Request No. 14. In the conferral meetings, Mr. Ailion's counsel's position was that HST must comply with the order in this respect even though it was not part of Request No. 14 or Mr. Ailion's Motion to Compel.

by use of a third-party subpoena. HST agreed to produce the full list of the over 2,000 Independent Contractors/Third-Party Agencies along with their contact information. Mr. Ailion's counsel rejected that proposal.

## LEGAL STANDARD

"Rule 54(b) governs non-final orders and permits revision at any time prior to the entry of judgment, thereby bestowing sweeping authority upon the district court to reconsider [interlocutory orders]." *Hurt v. Javed*, 2024 WL 640849, at *2 (N.D. Ill. Feb. 15, 2024) (quoting *Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012) (alteration in original). Reconsideration is appropriate "where there is a compelling reason," including, *inter alia*, "to correct manifest errors of law or fact." *Id.* (citing *Saccameno v. Ocwen Loan Servicing, LLC*, 2018 WL 1240347, at *2 (N.D. Ill. Mar. 9, 2018) (citing *Hicks v. Midwest Transit, Inc.*, 531 F.3d 467, 474 (7th Cir. 2008))).

Discovery is limited to "matter[s] that [are] relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Discovery is limited to "nonprivileged matter[s] that [are] relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts have "extensive discretion in granting and denying discovery, [and] have long held that it is permissible to refuse to grant discovery of matters of 'marginal relevance.'" *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019).

**ARGUMENT**

The Court's June 17, 2024 Order suggests that HST has been ordered to obtain information sought by Mr. Ailion from the Independent Contractors/Third-Party Agencies and other third parties. (ECF 143 (granting the motion to compel the Six Requests).) But the Order, and colloquy in the hearing on the Motion to Compel, left open the suggestion that the compelled information could be obtained from the Independent Contractors/Third-Party Agencies through other means. June 17, 2024 Order ("The parties shall meet and confer regarding the most appropriate method for targeting responsive material."); Transcript of Proceedings at 21:15–22:5 (June 3, 2024), *attached as* Exhibit 2.

The most appropriate and least burdensome and expensive method to obtain that information would be the method Mr. Ailion has already employed in this case to obtain documents from another Independent Contractor (Jim Martelo): a third-party subpoena. To the extent that the Court contemplated that method in its order, HST requests that the Court clarify the order accordingly. To the extent that the Court is ordering HST to obtain this information from the over 2,000 non-party Independent Contractors/Third-Party Agencies, HST seeks reconsideration of the Order, for the reasons below.

Requests for production to a party are limited to documents, electronically stored information ("ESI"), and tangible things "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Where documents, ESI, and tangible things are outside of a responsive party's possession, custody, or control, it is not

– 8 –

obligated to conduct third-party discovery to obtain requested information; rather the requesting party may compel a nonparty to produce relevant materials in the nonparty's possession, custody, or control. *See* Fed. R. Civ. P. 34(c) (citing Fed. R. Civ. P. 45 (regarding subpoenas)).

While a party exercises control over employees and agents, a party does not exercise control over "independent contractors." *See Jackson v. Bank of New York*, 62 F. Supp. 3d 802, 814 (N.D. Ill. 2014); Rest. (2d) of Agency § 1.01 (defining an agent as one who "shall act on the principal's behalf and subject to the principal's control").[3] The "independent contractor" relationship is defined by the absence of control exercised by those for whom they are providing a service. *See Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378–79 (7th Cir. 1991). Courts generally apply the "economic realities" test to determine whether an individual is an independent contractor, considering: (1) "control and supervision of the worker, including directions on scheduling and performance," (2) kind of occupation and nature of skill required, (3) responsibility for operation costs, (4) form of payment and benefits, and (5) length of job commitment. *Id.* ("[T]he employer's right to control is the most important"). Applying these or similar factors, courts have regularly confirmed that

---

[3] Since agency law is substantive, federal common law provides the applicable agency principles. *Erie Ry. Co. v. Thompkins*, 304 U.S. 64, 80 (1938). Nevertheless, "the federal common law of agency, Illinois agency law, and the Restatement of Agency are all in accord on general agency principles, thereby obviating choice-of-law concerns." *NECA-IBEW Rockford Local Union 364 Health & Welfare Fund v. A&A Drug Co.*, 736 F.3d 1054, 1058 (7th Cir. 2013) (citing *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000)); *Moriarty v. Glueckert Funeral Home, Ltd.*, 155 F.3d 859, 865–66 n.15 (7th Cir. 1998) (federal law of agency relies on the Restatement of the Law of Agency).

those working under agreements to market insurance products are independent contractors. *EEOC v. Catholic Knights Ins. Co.*, 915 F. Supp. 25, 31 (N.D. Ill. 1996) (compiling cases). The individuals and Third-Party Agencies who market insurance products on behalf of HST and its insurance carrier clients are non-exclusive independent contractors. HST Independent Agent Agreement (rev. March 2019), *attached as* Exhibit J to ECF 81 (filed under seal) (identifying HST agents as "Independent Contractors"); Declaration of Adriana Rock ("Rock Decl."), *attached as* Exhibit 3, at ¶ 4. The Independent Contractors/Third-Party Agencies may place calls on behalf of companies other than HST and its carriers, including companies unaffiliated with HST. Ex. 3 at ¶ 4. HST does not have access to or control over the Independent Contractors/Third-Party Agencies' files or document systems. *Id.* ¶ 8.

Each of the Independent Contractors/Third-Party Agencies "retain[s] all ownership rights to its confidential and/or proprietary information." Ex. J to ECF 81 at 2-3. Some of this information may relate to companies other than HST or the carriers it represents.

The Independent Agency Agreement contains no provision that creates the ability for HST to access the Independent Contractors/Third-Party Agencies' call data, files, or document systems, much less compel them to provide the information sought by Mr. Ailion. *See* Opp. to Mot. to Compel at 16-17 and 16 n.6 (ECF. 97). While the Agreement contains a provision requiring access to records relating to the use, disclosure, and safeguarding of Protected Health Information for the limited purpose of determining compliance with privacy and security rules, Ex. J to ECF 81

§ D.ii, at 3, that does not extend to the information sought by Mr. Ailion here. *See* Opp. to Mot. to Compel at 16 n.6 (ECF 97). Likewise, while the Independent Contractors/Third-Party Agencies must return "books, records, printed materials, leads and other documents furnished by HST" upon termination of the Agreement, Ex. J to ECF 81 at 7, that does not require them to provide any information at any time other than at Agreement termination, and it certainly does not require that they provide information that was *not* "furnished by HST," such as call and disposition data not in LeadMaster, IDNC information, and other data related to third parties.

In his Motion to Compel briefing, Mr. Ailion cited the general requirement in the Agreement that HST's Independent Contractors/Third-Party Agencies must "act in the best interest of HST and [its clients.]" (ECF 81 at 17). Again, that provision does not create a blanket ability for HST to demand and compel the production of the Independent Contractors/Third-Party Agencies' data and information. And it certainly does not allow HST to seek information unrelated to HST.

Mr. Ailion should obtain the information sought from these non-parties through a third-party subpoena. That proposal is consistent with the Court's order to find the "most appropriate method for targeting responsive material." It balances Mr. Ailion's purported need for data and information from the Independent Contractors/Third-Party Agencies against HST's contractual inability to force the Independent Contractors/Third-Party Agencies to produce the data.[4] HST also would

---

[4] This is also the proportionate result. Even if HST could force the Independent Contractors/Third-Party Agencies to provide the information sought by Mr. Ailion (which it cannot), there would be a significant burden associated with reviewing any

be unable to authenticate any documents provided to it by the Independent Contractors/Third-Party Agencies, which would render the documents inadmissible in any event. *See, e.g.*, *Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 496 (7th Cir. 2006) (to be admissible "documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) [since recodified as Fed. R. Civ. P. 56(c)] and the affiant must be a person through whom the exhibits could be admitted into evidence.") (quoting *Scott v. Edinburg*, 346 F.3d 752, 760 n.7 (7th Cir. 2003)); *Chemetall GMBH v. ZR Energy, Inc.,* 320 F.3d 714, 721–22 (7th Cir. 2003) (affirming the district court's finding that there was no authentication of a third party document for which no affidavit or deposition was submitted to show its authenticity); *Cox v. NFL*, 29 F. Supp. 2d 463, 468 (N.D. Ill. 1998) (to be admissible and considered by the court, a document must be authenticated); Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.")

Indeed, once Mr. Ailion has the list of Independent Contractors/Third-Party Agencies and their contact information, he could undertake on his own the same random samplings that his counsel once proposed (but later withdrew) to demand by subpoena the information from the Independent Contractors/Third-Party Agencies

---

responsive information from the Independent Contractors/Third-Party Agencies, including reviewing and isolating data unrelated to HST for any Independent Contractors/Third-Party Agencies, like Martelo, who was either unwilling or unable to separate the unrelated data from responsive material. Rock Decl. at ¶¶ 4, 5, 7-9, 13.

with custodial affidavits and/or depositions to authenticate any responsive materials received. Unlike HST's inability to compel the Independent Contractors/Third-Party Agencies to provide or authenticate the information sought by Mr. Ailion, the Independent Contractors/Third-Party Agencies would be required to respond to Mr. Ailion's subpoenas, just as Mr. Martelo did. And Plaintiff would have a legal remedy for any Independent Contractors/Third-Party Agencies who fail to respond to a properly served subpoena. No such enforcement mechanism exists for HST to demand and compel data from the Independent Contractors/Independent Agencies. It would be inefficient, unduly burdensome, and unduly expensive for HST to send communications to over 2,000 Independent Contractors/Third-Party Agencies requesting the information sought in the six requests at issue here when the Independent Contractors/Third-Party Agencies have no legal obligation to comply with the request, and HST has no legal remedy to compel the production of the information.

Undersigned counsel conferred with counsel for Plaintiff regarding this motion by phone, and Plaintiff opposes the relief sought herein.

## CONCLUSION

For these reasons, HST respectfully requests that the Court clarify its June 17, 2024 order to indicate whether the compelled third-party information should be obtained through a third-party subpoena. To the extent that HST has been ordered to obtain the information from the third parties, HST respectfully requests that the Court reconsider the order.

Dated: July 9, 2024    Respectfully submitted,

/s/   John K. Theis
Rodney Perry
John K. Theis
Thanin O. Stewart
RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street, Suite 2900
Chicago, Illinois 60602
Telephone: 312.471.8700
Facsimile: 312.471.8701
rperry@rshc-law.com
jtheis@rshc-law.com
tstewart@rshc-law.com

*Counsel for Defendant Healthcare Solutions Team, LLC*