**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ADAM AILION, individually and on behalf of a class of others similarly situated, | |
| Plaintiff, | Civil Action No. 1:21-cv-06231 |
| v. | Hon. LaShonda A. Hunt |
| HEALTHCARE SOLUTIONS TEAM, LLC, | Hon. Jeannice W. Appenteng |
| Defendant. | |

**DEFENDANT'S RESPONSE TO RULE TO SHOW CAUSE**

Defendant Healthcare Solutions Team, LLC ("HST"), by and through the undersigned counsel, hereby submits its Response to this Court's July 29, 2024 minute order (ECF 163) issuing a rule to show cause as to why HST should not be sanctioned for non-compliance with the Court's previous orders on June 17, 2024 (ECF 143) and July 11, 2024 (ECF 153 and 154) (the "Orders") compelling HST to obtain and produce information and documents in the possession of non-parties that are responsive to Plaintiff's Interrogatory Nos. 1 and 10 and Requests for Production Nos. 4, 5, and 9.

**INTRODUCTION**

As explained below, HST acts as a broker between insurance companies and third-party individual contractors and agencies (the "Independent Contractors/Third-Party Agencies"). These Independent Contractors/Third-Party Agencies can and do market insurance products on behalf of insurance carriers with whom HST has no relationship. Since HST does not have control over information and documents in the exclusive possession of the Independent Contractors/Third-Party Agencies, it has no legal obligation to seek such information from the thousands of such contractors and agencies with which it does business. In the Seventh Circuit, the test for

determining whether a party has control over materials in the possession of a third party is whether the party has a legal right to control or obtain the requested discovery. *See*, *e.g.*, *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating and Air-Conditioning Engineers, Inc.*, 755 F.3d 832, 839 (7th Cir. 2014) (acknowledging the requisite test and holding the plaintiff failed to prove the defendant "had *sufficient* control over the documents so as to warrant the motion to compel discovery") (emphasis in original).[1] The record before this Court plainly demonstrates that HST does not possess the requisite control over the information and documents at issue.

Indeed, HST repeatedly emphasized its lack of control over the information and documents at issue in its responses to Plaintiff's discovery requests, its Opposition to the Motion to Compel filed on January 25, 2024, and in the charts filed by the parties at the Court's request summarizing the remaining discovery disputes to be resolved after the parties had met and conferred. When the Court issued its ruling, HST's counsel recognized that its emphasis on the burden of complying with the request during oral argument may have overshadowed its written argument regarding its lack of control over the data. That is why HST again raised the lack of control issue in its motion for reconsideration. In doing so, HST simply sought to bring this critical threshold issue back to the Court's attention and to demonstrate that it had made the requisite showing that it lacks legal control over documents and data held by the third parties. HST regrets any confusion that may have arisen during oral argument, but it respectfully submits that it cannot be compelled to produce the information at issue for which it has no legal right or control, and therefore it was substantially justified in not complying with the Orders.

---

[1] *See also Johansen v. GVN Mich., Inc.*, Case No. 15 C 912, 2016 WL 9185323, at *1 (N.D. Ill. April 27, 2016) (holding, in a TCPA case, that defendants did not have possession, custody, or control of requested call records); *Robinson v. Moskus*, 491 F. Supp. 3d 359, 364-66 (C.D. Ill. 2020) (discussing the requisite test and denying motion to compel where the plaintiff failed to establish that the defendants had any legal right to control or obtain documents).

## BACKGROUND FACTS

On November 19, 2021, Plaintiff Adam Ailion filed suit against HST and National General Holdings Corp. ("NatGen") seeking relief under, among other things, the Telephone Consumer Protection Act ("TCPA"). *See* Complaint, ECF 1. This Court ultimately dismissed NatGen from the case, and the only claim that remains is that under the TCPA against HST.

***Plaintiff's discovery from HST and from Non-Party Jim Martelo.*** Plaintiff has propounded three sets of interrogatories and requests for production on HST. Plaintiff's first set of discovery requests includes twelve interrogatories and thirty-three requests for production, forty of which were the subject of Plaintiff's Motion to Compel. As relevant to the present Rule to Show Cause, Plaintiff sought the following categories of information and documents from HST:

- Interrogatory 1: "Call detail and disposition information for the following: All residential telephone subscribers in the United States (i) to whom a call was made for the purpose of encouraging the purchase of goods or services from or through HST, or to find a marketing "lead" for such, (ii) to such residential telephone line, (iii) where the consumer had previously asked NatGen, HST, or any of their lead generators or telemarketing vendors not to call them, and (iv) where there was more than one such call within a 12-month period, at least one of which was made on or after the date four years prior to filing of this action."

- Interrogatory 10: "Identify any system or database of any kind you or your insurance agents (or both) use to keep track of prospective business."

- RFP 4: "Produce all call-related data for each call responsive to Interrogatory No. 1, including but not limited to outbound call data, inbound call transfer data, and disposition data."

- RFP 5: Produce all lead data for each call responsive to Interrogatory No. 1.

- RFP 9: Produce the internal do-not-call list and associated data of each third party that generates business for you through telemarketing (e.g., Jim Martelo).

HST responded to these requests, and the parties subsequently met and conferred regarding HST's responses. HST supplemented its responses and produced information and documents in its possession, custody, and control. That production is substantial. HST has produced *all* of the data

– 3 –

housed in LeadMaster, HST's customer relations management database, between November 19, 2018, and November 19, 2022, consisting of over 1.84 GB of data related to calls, leads, and do-not-call requests. HST also produced a separately maintained do-not-call list, referred to as the "Blacklist," that is incorporated into LeadMaster.

HST has maintained, however, that it was not required to obtain and produce information or documents in the possession, custody, and control of the more than 5,000 former and current Independent Contractors/Third-Party Agencies who may have marketed insurance products on behalf of HST-partnered insurance carriers during the relevant time period. HST's position has remained consistent that Plaintiff should obtain the requested information by subpoena—as he did for James Martelo, the Independent Contractor/Third-Party Agency that Plaintiff alleges made the TCPA violative calls in this case. *See* Martelo Subpoena, *attached hereto as* Exhibit 1. On July 25, 2024, HST provided Plaintiff with a list of the names and last known contact information for over 5,000 former and current Independent Contractors/Third-Party Agencies that may have marketed insurance products on behalf of HST-partnered insurance carriers between November 19, 2018, and November 19, 2022, the temporal limitation applicable to the Court's Orders.[2]

***Plaintiff's Motion to Compel.*** Plaintiff moved to compel further responses from HST to forty distinct discovery requests, including the five identified above. *See* Plaintiff's Motion to Compel (Dec. 15, 2023), ECF 81 (Sealed), 82 (Public); *see also* HST's Response to Plaintiff's Motion to Compel (Jan. 26, 2024), ECF 101; Plaintiff's Reply in Support of Motion to Compel (Feb. 9, 2024), ECF 105. Following several hearings before this Court on Plaintiff's Motion to

---

[2] In previous filings, HST referenced over 2,000 Independent Contractors/Third-Party Agencies. That number was limited to its current Independent Contractors/Agencies. The list of current *and former* Independent Contractors/Third-Party Agencies who contracted to provide services to HST during the relevant period exceeds 5,000.

– 4 –

Compel, multiple meet and conferral efforts between the parties, and accompanying joint status reports updating this Court on the progress of those efforts, this Court made several rulings on Plaintiff's Motion to Compel on June 17, 2024. *See* Minute Entry (June 17, 2024), ECF 143. As relevant here, the Court granted Plaintiff's motion to compel as to Interrogatory Nos. 1 and 10, and RFP Nos. 4, 5, 9, and 14 and ordered the parties to meet and confer regarding the most appropriate method for targeting responsive material. *Id.*

On July 8, 2024, HST filed objections with the District Judge as to this Court's June 17, 2024 order pursuant to Federal Rule of Civil Procedure 72(a), arguing among other things that HST did not exercise control over the Independent Contractors/Third-Party Agencies who possessed the information to be compelled. *See* ECF 149. HST also moved this Court on July 9, 2024, seeking clarification and/or reconsideration with respect to Plaintiff's Interrogatory Nos. 1 and 10 and Requests for Production Nos. 4, 5, 9, and 14. *See* ECF 151. The Court clarified its June 17, 2024 order with respect to Request for Production No. 14 but denied HST's motion as to Interrogatory Nos. 1 and 10 and Requests for Production Nos. 4, 5, and 9. *See* Minute Entry (July 11, 2024), ECF 153; Order (July 11, 2024), ECF 154.

HST filed Amended Objections on July 18, 2024, requesting that the District Judge modify or overrule the portions of the Court's June 17 and July 11, 2024 Orders requiring HST to obtain information from the Independent Contractors/Third-Party Agencies. *See* HST's Am. Objections (July 18, 2023), ECF 155; Minute Entry (June 17, 2024), ECF 143; Order (July 11, 2024) ECF 154. The District Judge overruled HST's Amended Objections on July 24, 2024, without considering their merits. *See* Minute Entry (July 24, 2024), ECF 160; Transcript of Proceedings dated July 24, 2024 at 6:2-4, 6:21-7:1, 9:18-9:21, 14:14-24, 15:22-16:1, 20:12-17, 21:13-14, 23:23-24:4, 25:2-6 ("I understand the difficult position that you're in here, but you've got to get

– 5 –

this teed up before the magistrate judge. If you think that there's something that she needs to consider, that she needs to rule on here that should have been ruled on before her, you've got to tee that up.").

## ARGUMENT

**I.     HST's Non-Compliance was Substantially Justified because it Has No Legal Right to Control or Demand the Requested Information.**

Federal Rule of Civil Procedure 34(a)(1) specifies that a party is required to produce documents only within its "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Where documents, ESI, and tangible things are outside of a responding party's possession, custody, or control, the party is not obligated to conduct third-party discovery to obtain requested information. Instead, the requesting party must direct a subpoena to a nonparty to produce any relevant materials in its possession, custody, or control. *See* Fed. R. Civ. P. 34(c) (citing Fed. R. Civ. P. 45 (regarding subpoenas)). Plaintiff indisputably failed to follow the proper course of action in this case.

HST has produced all data responsive to Plaintiff's Interrogatory Nos. 1 and 10 and Requests for Production Nos. 4, 5, and 9 in its possession, custody and control. There is no dispute that any additional responsive information is in the possession of the Independent Contractors/Third-Party Agencies. Plaintiff has not (and cannot) put forth sufficient evidence to prove that HST has the legal right to control or demand additional responsive information in the exclusive possession of the Independent Contractors/Third-Party Agencies.

**A.     HST Does Not Control the Independent Contractors/Third-Party Agencies.**

Plaintiff has the burden of establishing that HST has the legal right to control or obtain information and documents from the Independent Contractors/Third-Party Agencies responsive to Interrogatory Nos. 1 and 10 and Request for Production Nos. 4, 5, and 9. *Tech. Concepts, L.P. v. Continental Mfg. Co.,* No. 92 C 7476, 1994 WL 262119, at *1 (N.D. Ill. June 10, 1994) (a motion

to compel proponent bears the burden of showing that a party is in control of requested documents). Plaintiff has not met his burden here, and the record evidence establishes that HST has no access to or control over the requested information and documents.

The over 5,000 former and current individuals and/or agencies that may have marketed insurance products on behalf of HST's partnered insurance carriers during the relevant time period were or are *non-exclusive*, independent contractors, not HST employees. *See* Declaration of Adriana Rock ¶ 4, *attached hereto as Exhibit 2*. They have marketed insurance products pursuant to an Independent Agent Agreement (the "Agreement"), *see* HST Independent Agent Agreement (rev. March 2019), *attached as* Exhibit J to ECF 81 (filed under seal), and HST does not exercise control over the manner, method, or means by which the Independent Contractors/Third-Party Agencies perform the services they agreed to provide. *See Knight*, 950 F.2d 377, 378–79 (7th Cir. 1991) (the "independent contractor" relationship is defined by the absence of control exercised by those for whom the independent contractor is providing a service).[3]

Here, the Independent Contractors/Third-Party Agencies are paid on a 1099 basis, and HST does not impose scheduling requirements on them nor require them to make a minimum number of calls to leads. Rock Decl. ¶¶ 10-12. The Independent Contractors/Third-Party Agencies can and do place calls on behalf of companies other than HST and its carriers, including companies unaffiliated with HST. Rock Decl. ¶ 4. They also can and do obtain and pursue sales leads from sources other than HST—as Mr. Martelo did in obtaining Plaintiff's telephone number. *Id.* at ¶ 8. While HST provides access to sales leads to certain Independent Contractors/Third-Party Agencies through LeadMaster, HST does not require the Independent Contractors/Third-Party Agencies to

---

[3] Courts have routinely confirmed that those working under agreements to market insurance products are independent contractors. *See EEOC v. Catholic Knights Ins. Co.*, 915 F. Supp. 25, 31 (N.D. Ill. 1996) (compiling cases).

use HST-provided leads; nor does HST control how they utilize the information or contact leads, whether provided through LeadMaster or otherwise. *Id*. at ¶¶ 6-7. Importantly, HST does not own, have access to, or control the Independent Contractors/Third-Party Agencies' files, document systems, call records, or non-LeadMaster leads. *Id.* at ¶ 9. Indeed, some of this information may relate to services the Independent Contractors/Third-Party Agencies perform for companies other than HST and the carriers with which HST partners, including competitors. Rock Decl. ¶ 4.

HST believes that this evidence plainly demonstrates that HST does not have control over the Independent Contractors/Third-Party Agencies sufficient to compel the production of the information Plaintiff seeks from them.

### B. The Agreement Expressly Provides that HST Does Not Have the Legal Right to Control or Obtain the Requested Information.

In Section D, the Agreement provides that "[e]ach Party *shall* retain all ownership rights to its confidential and/or proprietary information." *See* Agreement, § D(v) (emphasis added.) It is undisputed that the Independent Contractors/Third-Party Agencies' call, lead, and similar data is *their* confidential or proprietary information. *Accord Johansen*, 2016 WL 9185323, at *1 ("Neither of the defendants who are subject to this motion has a legal right to demand the documents. The chain of contracts between [the defendants] on one end and [the sub-contractor] on the other does not entitle the former to demand call records from the latter."). Indeed, HST only has the right to retrieve from the Independent Contractors/Third-Party Agencies *after termination of the Agreement* "books, records, printed materials, leads and other documents *furnished* by HST or Companies . . . ." *See* Agreement, § K (emphasis added.) The outstanding information Plaintiff has requested would not have been furnished to the Independent Contractors/Third-Party Agencies by HST. Rock Decl. ¶¶ 6-8, 12. So HST has no right to it.

In response to HST's evidence that it lacks control over the information at issue, Plaintiff suggested that HST has the legal right to control or demand the requested information from the Independent Contractors/Third-Party Agencies under Section B(iii) of the Agreement. However, that section simply provides that the Independent Contractors/Third-Party Agencies' responsibilities include compliance "with Companies or HST rules, regulations, procedures as announced from time to time, and to act in the best interests of HST and Companies." Agreement, § B(iii). That provision does not create any legal right for HST to demand or compel the production of the Independent Contractors/Third-Party Agencies' data and records held exclusively in their possession.

Plaintiff's suggestion otherwise is contrary to Section P(iv) of the Agreement, which prohibits either party from unilaterally modifying the terms of the Agreement. *See id*., § P(iv). Therefore, HST cannot create a rule or regulation to compel the Independent Contractors/Third-Party Agencies to provide information and documents that they maintain separate from HST, including their call data, files, and do-not-call lists, when Section D(v) of the Agreement expressly provides that the Independent Contractors/Third-Party Agencies retain all ownership rights to that information.

Plaintiff has argued that the fact that current Independent Contractors/Third-Party Agencies have HST email accounts is somehow indicative of HST's control of the requested data in these third parties' possession. HST provides current Independent Contractors/Third-Party Agencies with email accounts under the @myhst.com email domain, and HST has agreed to search three of those accounts under the ongoing search for ESI related to other of Plaintiff's discovery requests not at issue here. But the categories of data and information at issue here—call data, call disposition information, lead data, the identity of databases, and internal do-not-call lists and

associated data—would typically not be found in these email accounts (and HST has made that known to Plaintiff). The Independent Contractors/Third-Party Agencies would maintain this data on their own independent document management and data systems, to which HST does not have access. Rock Decl. ¶¶ 6-7, 9, 12.

Finally, Plaintiff also has suggested that Adriana's Rock's deposition testimony that she previously investigated telemarketing complaints related to the Independent Contractors/Third-Party Agencies indicates HST's control of the requested discovery in their possession. Conducting an investigation, however, is not tantamount to exercising control, as the former is merely an inquiry. *See* Black's Law Dictionary (12th ed. 2024) ("Investigation: the activity of trying to find out the truth about something, such as a crime, accident, or historical issue…."). Plaintiff does not (and cannot) present evidence of what, if any, information or documents Rock obtained during any investigation she conducted. Nor does he (or can he) present any evidence that the Independent Contractors/Third-Party Agencies were ever *legally compelled* by HST to cooperate with an investigation or provide any information requested during any investigation.

Indeed, the Seventh Circuit's decision in *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1426 (7th Cir. 1993), is instructive here. In that case, the Seventh Circuit considered whether the plaintiffs could be penalized for failing to produce chromatograms used to test soil that the defendant requested in discovery. The information was in the physical possession of a third-party hired to conduct the soil analysis. Despite determining that the third-party would have given the plaintiffs the chromatograms had they asked, the Court nevertheless found that the plaintiffs were not even required to ask pursuant to Rule 34 requests for production because the information was not in their possession, custody, or control within the meaning of Rule 34(a)(1) since the plaintiffs could not order the third-party to surrender the information to them. *Id*.

As the Court observed, "the fact that a party could obtain a document if it tried hard enough and maybe if it didn't try hard at all does not mean that the document is in its possession, custody, or control; in fact it means the opposite." *Id*. at 1427. Rather, because the plaintiffs had disclosed the sources of information to the defendant, the Court observed that if the defendant "wanted pertinent documents in the custody or control of [the third parties] it had only to issue a subpoena duces tecum." *Id*. at 1426. That is much the scenario here. Like *Chevariat*, the fact that HST might be able to make a request for information from the Independent Contractors/Third-Party Agencies does not lead to the conclusion that it has the legal right or obligation to control or obtain the information. *See also Robinson*, 491 F. Supp. 3d at 361, 364 ("a party's 'practical ability' to obtain the documents is irrelevant absent a legal right to do so.") (citing, *inter alia*, *Folding Carton Antitrust Litig.*, 76 F.R.D. 420, 423 (N.D. Ill. 1977)).

As stated above, on the issue of control for purposes of discovery under 34(a)(1), the test is whether the party has a legal right to control or obtain the information. *Thermal Design,* 755 F.3d at 839. HST does not have such a legal right in this case. Absent the legal right to control or obtain the relevant information, HST should not have been compelled to produce it. Respectfully, this Court's Orders requiring that HST do otherwise are contrary to well-established law in the Seventh Circuit. *See id.* (holding the plaintiff failed to satisfy its burden that the defendant "had sufficient control over the documents so as to warrant the motion to compel); *Chaveriat*, 11 F.3d at 1426-27 (7th Cir. 1993) (holding the plaintiffs did not have custody or control of requested documents in possession of a nonparty because they could not order the nonparty to surrender them); *Johansen*, 2016 WL 9185323, at *1 (holding, in a TCPA case, that defendants did not have possession, custody, or control of requested call records); *Tech. Concepts*, 1994 WL 262119 at *2 (denying motion to compel documents in possession of a third party)

### C. HST's Non-Compliance was Substantially Justified.

Sanctions cannot be awarded where the party's nondisclosure, response, or objection was substantially justified. Fed. R. Civ. P. 37(a)(5)(A)(ii); *see also* Fed. R. Civ. P. 37(c)(1). In the context of Rule 37, "substantially justified does not mean justified to a high degree, but rather that there is a genuine dispute, or that reasonable people could differ as to the appropriateness of the contested action." *Lorillard Tobacco Co. v. Elston Self Serv. Wholesale Groceries*, 259 F.R.D. 323, 327 (N.D. Ill. 2009) (quoting *Pierce v. Underwood,* 487 U.S. 552, 565 (1988) (cleaned up).

HST should not be sanctioned when it has acted in conformity with well-settled law. Because HST has no legal right to control or obtain the materials that are the subject of the Court's Orders, HST's actions are in accordance with the prevailing law in the Seventh Circuit. *See*, *e.g.*, *Robinson*, 491 F. Supp. 3d at 361, 364 ("This requirement that a party have the legal right to obtain the documents sought in order to be deemed to have possession, custody, or control of them for purposes of Rule 34(a)(1) is well established in this Circuit;" and "a party's 'practical ability' to obtain the documents is irrelevant absent a legal right to do so."). HST should not be sanctioned for failing to do something that it had no legal right to do in the first place. *See Adkins v Mid-American Growers* 143 F.R.D. 171, 174 (N.D. Ill. 1992) (overruling magistrate order of dismissal sanction because magistrate's order was erroneous where appropriate standard for dismissal as a sanction, willfulness and lack of success of less drastic sanctions, was not applied).

### II. HST Addressed its Lack of Legal Right to Control or Obtain the Requested Information in its Written Submissions to the Court, and Therefore Did Not Waive the Argument.

In the Court's ruling on HST's Motion to Clarify or for Reconsideration (ECF 154), the Court notes that HST did not advance an argument regarding the compelled information being outside its possession, custody, or control at the June 13, 2024 hearing. (ECF 154 at 2-3.)

Respectfully, that is simply not the case. Although HST did not emphasize the point in oral argument that Plaintiff failed to establish that HST had any control over the documents and information in question, HST repeatedly addressed its lack of control over the subject information in its response to Plaintiff's discovery requests, in its opposition to the Motion to Compel filed with this Court on January 25, 2024, and in the charts that the parties filed setting forth their positions on the remaining disputes from the Motion to Compel following the various meet and confer conferences. *See*, *e.g.*, HST's Response to Plaintiff's Requests for Production, Ex. J. to ECF 82 at 3, 7, 8, and 10; HST's Response to Mr. Ailion's Motion to Compel, ECF 101 at 16 ("[T]o the extent that HST's agents maintain these lists, the lists are in the possession, custody, and control of those independent contractors, not HST. Nothing in HST's agent agreement gives HST the ability to demand each agent's DNC list and associated data."), 19 (same); Summary of Discovery Disputes (May 3, 2024), ECF 134-1 at 7-8 ("Plaintiff is requesting HST compile [documents] for seven years from HST's more than 2,000 agents . . . nothing in the Independent Agent Agreement (ECF 81-10) gives HST control of any such documents in the agents' possession," 9 (same), 14 (same); Summary of Discovery Disputes (June 12, 2024), ECF 142 at 7-8 (same), 10-11 (same), 17-18 (same).

      Therefore, HST's arguments were properly before the Court as they were contained in its written submissions. *See U.S. v. Dote,* 328 F.3d 919, 925, n.3 (7th Cir. 2003) (citing *Ross Bros. Const. Co. v. Int'l Steel Services, Inc.,* 283 F.3d 867, 872 (7th Cir. 2002) (issues raised in a party's submissions are presumptively before the deciding court). Accordingly, HST would now be unfairly prejudiced if the Court declines to consider a pertinent argument raised in briefing at an earlier instance.

**III. A Subpoena is the Most Appropriate and Least Burdensome and Expensive Method for Mr. Ailion to Obtain the Requested Information from Independent Contractors/Third-Party Agencies.**

Mr. Ailion can obtain the information sought from these non-parties through a subpoena. The subpoena process balances Mr. Ailion's purported need for data and information against HST's inability to force the Independent Contractors/Third-Party Agencies to produce it.[4]

Indeed, now that Mr. Ailion has the contact information for the Independent Contractors/Third-Party Agencies, which HST produced on July 25, 2024, he can demand by subpoena the information from them with custodial affidavits and/or depositions to authenticate any responsive materials received. Unlike HST's inability to compel the Independent Contractors/Third-Party Agencies to provide or authenticate the information sought by Mr. Ailion, the Independent Contractors/Third-Party Agencies would be required to respond to a subpoena, just as Mr. Martelo did. Further, Plaintiff would have a legal remedy for any noncompliance. No such enforcement mechanism exists for HST. It would be inefficient and unduly burdensome and expensive for HST to contact over 5,000 former and current Independent Contractors/Third-Party Agencies requesting information when the Independent Contractors/Third-Party Agencies have no legal obligation to comply, and HST has no legal remedy to compel the production of the

---

[4] Even if HST could obtain the requested information, it would be inadmissible without Mr. Ailion subpoenaing the Independent Contractors/Third-Party Agencies. For summary judgment purposes, for instance, "evidence must be admissible at trial." *Prude v. Meli*, 76 F.4th 648, 660 (7th Circ. 2023) "Documents must be authenticated by and attached to an affidavit that meets the requirements of [Rule 56(c)] and the affiant must be a person through whom the exhibits could be admitted into evidence"). *Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 496 (7th Cir. 2006) (quoting *Scott v. Edinburg*, 346 F.3d 752, 760 n.7 (7th Cir. 2003)). Because HST has no control over how its Independent Contractors/Third-Party Agencies utilize information provided to them through LeadMaster or otherwise, and does not own or have direct access to the Independent Contractors' IDNC lists, call data, files, or document systems outside of LeadMaster (*see* Rock Decl. ¶¶ 7, 9, 12), no HST employee will have the requisite personal knowledge to authenticate any information or documents provided to it by the Independent Contractors/Third-Party Agencies.

information.[5]

## CONCLUSION

For these reasons, HST respectfully requests that, after applying the requisite analysis on the issue of control, the Court find that sanctions are unwarranted and HST is substantially justified in its non-compliance with this Court's Orders because of a genuine and reasonable dispute based on both fact and law.

Dated: August 6, 2024

Respectfully submitted,

*/s/ Rodney Perry*
Rodney Perry
John K. Theis
Thanin O. Stewart
RILEY SAFER HOLMES & CANCILA LLP
One South Dearborn Street, Suite 2200
Chicago, Illinois 60603
Telephone: 312.471.8700
Facsimile: 312.471.8701
rperry@rshc-law.com
jtheis@rshc-law.com
tstewart@rshc-law.com

*Attorneys for Defendant Healthcare Solutions Team, LLC*

---

[5] Even if HST could force the Independent Contractors/Third-Party Agencies to provide the information sought by Mr. Ailion (which it cannot), there would be a significant burden associated with reviewing any responsive information from the Independent Contractors/Third-Party Agencies, including isolating data unrelated to HST for any Independent Contractors/Third-Party Agencies, like Martelo, who was either unwilling or unable to separate the unrelated data from responsive material. Rock Decl. ¶ 13.